CHARLES CUTLER PARSONS, (C. C. PARSONS), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17226. Promulgated January 31, 1951.

*A. D. Moffat, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

VAN FOSSAN, *Judge:* The sole issue before us involves the determination of the use of the "cash value" or "fair market value" of life insurance policies for the purpose of computing the taxable gain derived from an exchange of such policies.

Upon the suggestion of the general agent for The Northwestern Mutual Life Insurance Company, petitioner directed that company to revamp his insurance program with it. This was accomplished by exchanging all of the endowment life insurance policies which petitioner had with Northwestern for ordinary and limited payment life policies of the same date and age. In addition, petitioner received in exchange a new single premium life policy in the full amount of $8,500 and a small cash refund. As a result of the transaction, petitioner obtained a coverage of $38,000 as against that of $27,000 under the old endowment policies. In effecting this exchange, Northwestern applied the total cash surrender value of the surrendered policies as of March 17, 1942, leaving a balance due it of $158.46. This amount petitioner paid by his check.

Petitioner returned the transaction in accordance with his interpretation of Sol. Op. 55, the pertinent portion of which is quoted above, and reported a taxable gain of $2,366.34. Respondent proceeded as set. out in our Findings of Fact and determined a taxable gain of $3,349.72 or $983.88 more than that reported by petitioner. The difference is attributable for the most part to the difference between the cost and the cash surrender value of Policy No. 3170302, the new single premium policy, in the amount of $8,500. The policy cost $6,541.40 and on the date it was acquired had a cash surrender value of $5,531.02.

A life insurance policy is property within the purview of the tax statutes. See *Lucas* v. *Alexander* (CCA-6, 1928), 27 Fed. (2d) 237, 239. And here, the surrender of the old policies and the acquisition of the new constituted an exchange of property within the meaning of section 111 (b), Internal Revenue Code.[1]

Petitioner argues in his brief that Sol. Op. 55, *supra,* was an executive interpretation of section 202 (b) of the Revenue Act of 1918 and its use of the term "fair market value"; that the provision so interpreted appears in each revenue act enacted subsequent to 1918 and appears today as section 111 (b), *supra,* and that, therefore, Sol. Op. 55, *supra,* has been given the force and effect of law by reenactment of the statute it construed. Respondent does not dispute petitioner's argu-

---

[1] SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS.

* * * * * * *

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

ment but takes the position that petitioner misinterpreted the scope and import of Sol. Op. 55, *supra*, and contends that the term "cash value" of the new policy appearing therein does not mean its cash surrender value, but rather means the amount which the insurance company would charge for such a policy in an outright sale.

This brings us to the specific question of whether the fair market value (or cash value) of the new policy, received in the transaction here involved, is its cash surrender value or its cost.

Fair market value is what a willing buyer would pay to a willing seller for an article where neither is acting under compulsion. This is a familiar rule and the courts have generally held that when property has been traded for property, the fair market value of the property received in the transaction is its exchangeable value realizable in money's worth. E. g., *Walls* v. *Commissioner* (CCA-10, 1932), 60 Fed. (2d) 347; *Logan* v. *Commissioner* (CCA-2, 1930), 42 Fed. (2d) 193.

Since the only value realizable at any time prior to petitioner's death was and will be the cash surrender value, the petitioner urges that this would represent the fair market value of the new policy. We do not agree.

The cash surrender value of a life insurance policy is the amount that will be paid to the insured upon surrender of the policy for cancelation. It is merely the money which the company will pay to be released from its contract. However, insurance companies desire to discourage the surrender of policies as much as they can equitably do so. For this reason, the cash surrender value is arbitrarily set at an amount considerably less than would be established by its reserve value. Vance, Insurance, pp. 55, 56. Furthermore, with policies on an annual premium basis no cash surrender value is generally allowed for the first two years. Huebner, Life Insurance, 4th Edition, page 279. It cannot, however, be seriously contended that a life insurance policy is entirely worthless until the third year following its issuance. Likewise, it can hardly be maintained that a transaction, such as here involved, would not be subject to tax because the new policy which was received in the exchange had no value. In determining what the term "fair market value" means, as applied to a single premium life insurance policy, we must not overlook the nature of the property with which we are dealing. Such a policy is unlike other property in that it appreciates rather than depreciates with the passage of time. Consequently, this type of property is subject to somewhat different rules from those that would apply to other forms of property. A consideration of all the elements involved must be the basis upon which to determine the fair value of such a policy.

The fair market value of a single premium life insurance policy on the date of issuance is the price which the insured, as a willing buyer,

paid the insurer, as a willing seller. If that is its fair market value in the hands of the insurer at the moment of issuance, what intervening factor is there to cause its value to decrease an instant later in the hands of the insured? In many types of insurance the uncertainty of the insured's ability to continue payment of premiums may adversely affect the value of the policy. This, however, is not the case with a single premium life insurance policy where there are no more premiums to pay and the policy's value can only increase with the passage of time.

The cash surrender value is the market value only of a surrendered policy and to maintain that it represents the true value of the policy is to confuse its forced liquidation value at an arbitrary figure with the amount realizable in an assumed market where such policies are frequently bought and sold. Moreover, such an argument overlooks the value to be placed upon the investment in the insured's life expectancy and the protection afforded his dependents.

The rule is, then, that the fair market value of a single premium life insurance policy for the purpose of determining taxable gain derived from exchange of insurance policies is the same price that any person of the same age, sex, and condition of health as the insured, would have to pay for a life policy with the same insurance company on the date the exchange took place. "This is a reasonable standard and one agreed upon by a willing buyer and a willing seller both of whom are acting without compulsion." Cf. *Ryerson* v. *United States*, (N. D. Ill., 1939) 28 Fed. Supp. 265, 267, aff'd. (1941) 312 U. S. 260.

In the instant case the fair market value of Policy No. 3170302 in the hands of the insurer on the date it was issued was $6,514.40. This was the one agreed upon by the petitioner as a willing buyer and the insurance company as a willing seller. No intervening factor has caused the value of that policy to decrease in the hands of petitioner. Therefore, for the purpose of determining the taxable gain derived by petitioner from the transaction here involved, the fair market value of Policy No. 3170302 in the hands of the petitioner is $6,514.40. Accordingly, respondent did not err in his determination, and we so hold.

*Decision will be entered for the respondent.*