**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Percy W. PHILLIPS and Betty R. Phillips (Husband and Wife), Respondents.**

**No. 7857.**

United States Court of Appeals Fourth Circuit.

Reargued Oct. 14, 1959.

Decided Feb. 20, 1960.

Myron C. Baum, Atty., Dept. of Justice, Washington, D. C. (Chas. K. Rice, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on brief), for petitioner, and Percy W. Phillips, pro se, and as Atty. for Betty R. Phillips.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and HOFFMAN, District Judge.

WALTER E. HOFFMAN, District Judge.

By this appeal we are called upon to consider the tax status of a transaction wherein the taxpayer, admittedly motivated by a desire to minimize taxes, sold an endowment policy twelve (12) days prior to its maturity, and thereafter treated the excess received by him, over and above the cost of said policy, as a capital gain. The Commissioner contends that the questioned transaction was merely a transfer of the right to receive ordinary income taxable as such. The Tax Court concluded the issue favorably to the taxpayer. Percy W. Phillips, (June 30, 1958) 30 T.C. 866.

The taxpayer is an attorney specializing in tax matters. In 1931 The Connecticut Mutual Life Insurance Company insured taxpayer's life for the sum of $27,000. At that time the taxpayer was married and had four children, the oldest being nine years of age, and the youngest of whom was three. On April 18, 1938, pursuant to the provisions of the life insurance policy, taxpayer converted same to a fully paid endowment policy providing for the payment of $27,000 to him on March 19, 1952, if he was living at that time, or to his estate or named beneficiary upon his earlier death. Taxpayer prepaid, on April 18, 1938, the annual premiums of $1,444.78 (including an item of $127.45 for a disability provision) for twenty-one years. Presumably the premiums were prepaid at a discount not revealed by the record.

As of March 7, 1952, the cost of the policy to the taxpayer was $21,360.49, and the cash surrender value was $26,973.78. As noted, twelve days thereafter the policy matured in the face amount of $27,000.00.

On March 7, 1952, taxpayer assigned and transferred all of his right, title and interest in and to said policy to his

two partners, Barker and Reid, for a cash consideration of $26,750, which amount was received and deposited in taxpayer's checking account on the same date. The assignment was executed on a form provided by the insurance company and, as we view the case, it is not essential that we refer to the contents thereof. Suffice it to say, it admittedly and irrevocably transferred any and all of taxpayer's interest in the policy.

The subsequent activities of the transferor and transferees are of little moment. The taxpayer invested a large portion of the proceeds of the sale of the policy in securities and, to a lesser extent, in assisting in the financing of a home purchased by his son-in-law; all of which was accomplished prior to the maturity date of the policy. The transferees, Barker and Reid, assigned and transferred their right, title and interest in the policy to a banking institution and, upon maturity of the policy on March 19, 1952, the insurance company paid the financial institution the face amount of the policy ($27,000), plus a dividend of $117.45.

Admittedly, had this policy been surrendered by the taxpayer, either at maturity for its face amount or earlier for its cash surrender value, it would not be considered a sale or exchange and the excess of the proceeds over taxpayer's cost basis would have been taxable as ordinary income. Bodine v. Commissioner, 3 Cir., 103 F.2d 982, certiorari denied 308 U.S. 576, 60 S.Ct. 92, 84 L. Ed. 483; Avery v. Commissioner, 9 Cir., 111 F.2d 19; Blum v. Higgins, 2 Cir., 150 F.2d 471, 160 A.L.R. 1093; cf. Osenbach v. Commissioner, 4 Cir., 198 F.2d 235. By the means of a sale prior to maturity, may the excess of proceeds over cost be considered a capital gain?

In this setting let us examine the facts of this case in the light of the statutes and judicial decisions. It is expressly provided that annuities received under a life insurance or endowment contract are taxable, as to the excess over the aggregate premiums or consideration paid, as a part of *gross* income. Sec. 22(b) (2) (A), Internal Revenue Code of 1939; 26 U.S.C. § 22 (1952 Ed.). The taxpayer herein is not a dealer in securities or life insurance policies. The policy in controversy provided for annual participation by way of dividends "in the divisible surplus which shall be determined and apportioned by the Company". Unlike the annuity in Arnfeld v. United States, Ct.Cl., 163 F.Supp. 865, certiorari denied 359 U.S. 943, 79 S.Ct. 722, 3 L.Ed.2d 676, which guaranteed a fixed rate of return and contained no life insurance feature,[1] the endowment policy reserve or cash value was always less than the amounts paid into the company. Excluding any dividend or rebate on premiums, the insured could only profit on his investment by dying long prior to the maturity date of the policy. The dividend declared is dependent upon a myriad of economic factors including, among others, the death rate of other policyholders, the yield on investments, government subsidies, bad debts, capital gains and losses, taxes, salaries, fringe benefits for the company's employees, and other items too numerous to mention. In the present day it is, of course, difficult to comprehend that any reliable mutual life insurance company will fail to declare a dividend, but we must determine the question presented without regard to economic conditions now existing.

The taxpayer agreed to and did prepay the premiums for twenty-one years at an annual figure of $1,444.78, or a total of $30,342.48. If we eliminate the premium for the "disability provision", the total payments would aggregate $27,663.93, without consideration of any discount feature for prepayment. The company obligated itself to pay $27,000, or less than the total agreed premium payments. The net premiums prepaid, after deduction for excess premiums re-

---

1. The Arnfeld contract contained certain death benefit provisions prior to the commencement of the life income payments.

funded annually by way of dividends or rebates on premiums, were $21,360.49.

■ We have no hesitancy in agreeing with the Tax Court on certain basic principles. The legal right of the taxpayer to decrease the amount of his taxes, or altogether to avoid them, by means which the law permits, cannot be doubted. Gregory v. Helvering, 293 U. S. 465, 55 S.Ct. 266, 79 L.Ed. 596; United States v. Isham, 17 Wall. 496, 506, 21 L.Ed. 728; Superior Oil Co. v. State of Mississippi, 280 U.S. 390, 395, 50 S. Ct. 169, 74 L.Ed. 504; Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Arnfeld v. United States, supra; Paine v. Commissioner, 8 Cir., 236 F.2d 398. If, upon careful scrutiny, the transaction has real substance and is not a sham, it matters not whether the taxpayer's aim was "to avoid taxes, or to regenerate the world". Chisholm v. Commissioner, 2 Cir., 79 F.2d 14, 15, 101 A.L.R. 200. The sale must be real and bona fide with no vestige of control retained over the policy or its transferees by means of utilizing wholly owned corporations and like devices which follow the line of cases relied upon by the Commissioner. The Tax Court held that there had been full compliance with the requirements of a real and bona fide sale, and the fact that the purchase by the transferees may have been one of accommodation does not affect the nature of the transaction as a sale. John D. McKee, et al., Trustees, 35 B.T.A. 239. Disregarding the motive and accommodation factors, as we must for this purpose, it necessarily follows that the Tax Court was correct in concluding that the transaction represented an unequivocal and bona fide sale.

Taxpayer urges that the endowment policy constituted "property" and, as such, was only subject to capital gains treatment. This argument does not necessarily follow. That it was "property" in the broad sense of the word does not satisfy the requirements of the law for capital gain purposes. In Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168, a fifteen year lease was held to be "property", but when cancelled by the lessor and lessee under an agreement wherein the lessor received a lump sum payment, the consideration received was not, for the purposes of internal revenue laws, deemed to be a return of capital, the court noting (313 U.S. 31, 61 S.Ct. 758):

> "Where, as in this case, the disputed amount was essentially a substitute for rental payments which § 22(a) expressly characterizes as gross income, it must be regarded as ordinary income, and it is immaterial that for some purposes the contract creating the right to such payments may be treated as 'property' or 'capital.'"

This brings us to a consideration of the principal argument advanced in this court by the Commissioner. Reliance is placed upon the recent decisions in Commissioner of Internal Revenue v. P. G. Lake, Inc.,[2] 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743, and Arnfeld v. United States, supra, the latter being an opinion of the Court of Claims decided subsequent to the present case.

■ In accepting the theory advanced by the Commissioner we recognize that the line of demarcation is not clear. There are, of course, factual differences in Lake and Arnfeld which the taxpayer insists afford an opportunity to distinguish the principles there invoked. We believe, however, that we are required to adopt the view that since the amounts receivable upon maturity or surrender of the endowment policy unquestionably would have been taxable as ordinary income, the taxpayer may not convert such income into capital gain by a bona fide sale of the contract which is the means of producing such ordinary income.

2. P. G. Lake was decided approximately 75 days prior to the Tax Court's opinion in the case at bar, but is not mentioned in the opinion and presumably it was prepared before P. G. Lake was announced.

The cash value of the policy was equivalent to the reserve value which, in turn, was computed on the basis of three percent compound interest. The sale of the policy was, as said by Mr. Justice Douglas in Lake, "essentially a substitute for what would otherwise be received at a future time as ordinary income". Manifestly, the consideration paid by taxpayer's partners was "not for an increase in the value of income-producing property." [356 U.S. 260, 78 S.Ct. 694.] The policy had a face value of $27,000, and its cash surrender value as of March 7, 1952 (the date of the assignment), was $26,973.78. The increased value had already accrued, and we cannot accept the suggestion that the assignees would pay out $26,750 merely to receive an increase in value of $26.22. While the tax-saving motive is not to be considered in ascertaining the bona fides of the sale or assignment, we think that it may play some part in determining whether or not the consideration was paid for an increase in the value of income-producing property, and whether the amount so received was essentially a substitute for what would have otherwise been received as ordinary income in a matter of twelve days.

If we could revert to 1938 and determine the status of the property at the time of taxpayer's conversion of the policy into an endowment contract, we could then give serious consideration to the myriad economic factors which are determinative of the dividend paid over a period of years. We believe, however, that the test to be applied with respect to a contract of insurance is the status of the same at the time the transaction in controversy may have occurred. Under ordinary circumstances in situations involving an insurance contract, whenever an amount receivable under the policy is in excess of the cost, the excess of the amount received, whether through the medium of sale, assignment or surrender, would be tantamount to the right to receive ordinary income.[3]

It is clear, from the decision in Arnfeld, that § 22(b) (2) (A) of the Internal Revenue Code of 1939 places the gain on a life insurance or endowment contract in a different category from that applicable to the gain on a sale of stock. While § 22(b) (2) (A) is essentially concerned with exclusions from gross income, it nevertheless relates specifically to endowment policies and the manner in which such contracts shall be taxed. It is illogical to assume that Congress intended to permit, even through the medium of a bona fide sale, the conversion of what is the equivalent of ordinary income into a capital gain in light of the language of § 22(b) (2) (A). The teachings of Lake and Arnfeld preclude us from so holding.

We have not overlooked the argument so ably presented by the taxpayer. We are primarily persuaded in our conclusion by the Lake and Arnfeld cases as we find ourselves unable, in the main, to draw reasonable distinctions between these two authorities and the case under consideration. It is argued by taxpayer that he "sold" his contract and consequently received no amounts "under" such contract. But in Arnfeld the annuity contract was "sold" and the court concluded that the excess was taxable as ordinary income. For like reasons we reject taxpayer's theory that § 22(b) (2) (A) has no application to a loss or gain on an insurance or endowment policy sold prior to maturity.

Nor have we discounted the contention that taxpayer sold a "bundle of rights" represented by the various features of the policy. In Guggenheim v. Rasquin, 312 U.S. 254, 61 S.Ct. 507, 85

3. On reargument, counsel for the Commissioner conceded that there may be exceptional circumstances requiring a modification of this rule. For example, if a policyholder had an amount receivable thereunder which was in excess of his cost, but policyholder was afflicted with a disease which would result in his death in the near future, he could, if in need of cash, assign his policy for an amount in excess of that receivable under the policy and, as to such excess, treat the same as a capital gain.

L.Ed. 813, these rights were recognized in determining the value of a policy for gift tax purposes where the taxpayer purchased, at a cost of $852,438.50, single-premium life insurance policies on her life in the aggregate face amount of $1,000,000. At substantially the same time she made an irrevocable gift of the policies to her three children and, for gift tax purposes, listed the policies at their cash surrender value of $717,344.-81. The court concluded that cost, rather than cash surrender value, was the proper criterion for evaluating gifts. While the Supreme Court held that the cash surrender value was an inadequate measure of valuation for gift tax purposes, it does not necessarily follow that in all sales of insurance or endowment contracts the "bundle of rights" has any true measure of value. Once again, for such purposes, the dominant motive may be considered. Whatever may be the measure of value, the excess received over cost was taxable as ordinary income.

For the foregoing reasons the decision of the Tax Court is

Reversed.