BOLLING JONES, JR., AND DOROTHY H. JONES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89580. Filed November 16, 1962.

*Harold E. Abrams, Esq.*, for the petitioners.
*Winfield A. Gartner, Esq.*, for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency in income tax for the taxable year 1956 in the amount of $1,131.85.

The only issue presented in this case is whether the petitioner, Bolling Jones, Jr., realized a long-term capital gain or ordinary income upon the assignment by him to the Fulton National Bank of Atlanta of a life insurance endowment policy.

### FINDINGS OF FACT.

Most of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference.

Bolling Jones, Jr., and Dorothy H. Jones are husband and wife residing in Atlanta, Georgia. They filed a joint Federal income tax return for the taxable year 1956 with the district director of internal revenue in Atlanta, Georgia.

Bolling Jones, Jr. (hereinafter referred to as the petitioner), during the taxable year 1956 was president of the Atlanta Stove Works, Inc., Atlanta, Georgia, and the Birmingham Stove and Range Company, Birmingham, Alabama. Petitioner was also a director and member of the Finance Committee of the Fulton National Bank of Atlanta (hereinafter referred to as the bank), and during the taxable year 1956 received a salary of $9,750 from the latter position.

Petitioner was not a dealer in annuities, life insurance, endowment policies, or securities during any time relevant to the events in this case.

On January 24, 1920, the Provident Life and Trust Company of Philadelphia (now Provident Mutual Life Insurance Company of Philadelphia and hereinafter referred to as Provident Mutual) issued to the petitioner its endowment policy No. 339290 (hereinafter referred to as the policy).

The policy provided for the payment of $10,000 to the petitioner or his assignee on January 24, 1957, if he survived that date, or the payment of that sum to his designated beneficiary, if he should die before such maturity of the endowment.

The policy further provided that after the payment of a certain number of full annual premiums, the petitioner would have four options. Provident Mutual would pay a cash amount on the surrender of the policy by the insured termed the "cash value." In the alternative, the insured had the option of taking "extended term insurance," "automatic paid-up insurance," or "pure endowment insurance" in lieu of the cash surrender value. These options are set out in a Table of Nonforfeiture Value contained in the policy.

The cash surrender values of the policy were as follows:

| Contract year | Cash surrender value | Contract year | Cash surrender value | Contract year | Cash surrender value |
|---|---|---|---|---|---|
| 2 | $150 | 14 | $2,230 | 26 | $5,370 |
| 3 | 280 | 15 | 2,440 | 27 | 5,710 |
| 4 | 420 | 16 | 2,660 | 28 | 6,050 |
| 5 | 560 | 17 | 2,890 | 29 | 6,420 |
| 6 | 730 | 18 | 3,120 | 30 | 6,790 |
| 7 | 900 | 19 | 3,370 | 31 | 7,190 |
| 8 | 1,090 | 20 | 3,620 | 32 | 7,600 |
| 9 | 1,270 | 21 | 3,890 | 33 | 8,030 |
| 10 | 1,470 | 22 | 4,160 | 34 | 8,480 |
| 11 | 1,650 | 23 | 4,450 | 35 | 8,960 |
| 12 | 1,830 | 24 | 4,740 | 36 | 9,460 |
| 13 | 2,030 | 25 | 5,050 | 37 | 10,000 |

The policy provisions in regard to the cash value and the reserve were as follows:

COMPUTATION OF CASH VALUE: The Cash Value shown in the Table of Non-Forfeiture Values herein contained, has reference to each One Thousand Dollars of Insurance originally represented by this Policy. At the end of the tenth and each succeeding Policy year, said Cash Value is the Reserve corresponding to each One Thousand Dollars of Insurance as aforesaid, omitting from the Reserve any fraction of a dollar. At the end of Policy years two to nine inclusive, said Cash Value is the Reserve as aforesaid, diminished by a cash sum as follows: For the second, third, fourth and fifth Policy years, Ten Dollars; for the sixth Policy year, Eight Dollars; for the seventh Policy year, Six Dollars; for the eighth Policy year, Four Dollars; for the ninth Policy year, Two Dollars.

COMPUTATION OF RESERVE: The Reserve on this Policy is computed according to the American Experience Table of Mortality with interest at three and one-half per cent. per annum.

The cash surrender value of the policy represented the reserve which Provident Mutual established to pay the obligations which it would incur in accordance with the policy provisions. This reserve was computed by Provident Mutual's actuaries, using primarily three factors—the American Experience Table of Mortality, the cost of insurance, and an earnings rate (interest of 3½ percent compounded annually). The mortality table shows the probabilities of the policyholder living or dying at each successive age, while the cost of insurance is the policy's share of claims which have been paid by the company and other expenses of maintaining the insurance contract in force.

The amount of the reserve, or cash surrender value, of the policy during later years was greater than the gross amount of premiums payable in the amounts and at the time called for by the policy, undiminished by the dividends paid or credited to the policy. This is true even if the additional amounts charged on the payment of premiums by the petitioner by reason of his quarterly payment, rather than an annual payment as provided for in the policy, are taken into consideration. If petitioner had paid all of the premiums in the amount called for by the policy and at the times called for by the policy, undiminished by dividends, the total amount of such premiums paid would have been $8,780.10 at the time the policy matured, while the reserve would have been $10,000. The petitioner actually paid total premiums of $9,208.50, undiminished by dividends, due to the additional charges for paying the premiums quarterly rather than annually.

The cash surrender value of the policy increased irrespective of the earnings of Provident Mutual and accrued merely through the passage of time.

Petitioner could at any time after the first 2 policy years find out what the cash surrender value of his policy would be at the end of each policy year or at any given date before the maturity of the policy. The cash surrender value of the policy was fixed by the terms thereof and the petitioner had at all times after the first 2 policy years a nonforfeitable right to the cash surrender value of the policy. It could have been surrendered to the company by the petitioner at any time after the first 2 policy years for its cash surrender value.

The annual premium paid on a policy of this type is determined by three basic actuarial assumptions. First, that a certain rate of interest will be earned by the insurance company's funds. Second, that the mortality rate will be in accordance with the American Experience Table of Mortality. Third, the cost of administration will be a certain fixed amount. All of these assumptions are theoretical in amount and conservatively computed for the purpose of providing for the solvency of the insurance company and the soundness of its insurance protection.

If the premiums received by Provident Mutual and its other earnings are found to be in excess of the amount required to pay claims, to take care of its increase in reserves, and to set aside something for contingencies, the excess is paid back to the insurance policyholders in the form of dividends.

Petitioner received so-called dividends, either in the form of credits against premiums due or in the form of direct cash payments. Provident Mutual is a mutual insurance company. The dividends totaled $1,532.20. The policy provision in regard to dividends provided:

DIVIDENDS: The proportion of surplus accruing upon the Policy (hereinafter called Dividends) shall be ascertained and distributed yearly and not otherwise, as follows: Upon a written request by the Insured or owner of the Policy, filed with the Company at its Home Office not later than thirty-one days after any anniversary of this Policy, current Dividends accruing as aforesaid shall be either: (a) payable in cash; or (b) applicable to the payment of any premium or premiums upon the Policy; or (c) used to purchase participating Paid-Up Additions to the Policy; or (d) left to accumulate to the credit of the Policy with interest at such rate as the Company may each year declare thereon, but never less than three per cent. per annum, payable when the proceeds of the Policy may become payable, or withdrawable in cash at any anniversary of the Policy on demand. Any request so made shall remain in effect until superseded by another request made in like manner for disposition of Dividends in one of the other ways aforesaid. If no request shall be made, Dividends will be paid in cash under the terms of clause (a), unless otherwise required by the law of the State in which the Policy may have been delivered, in which case (no request having been made as aforesaid) Dividends will be applied according to the requirement of such law.

In accordance with a request dated December 19, 1956, from the petitioner to change the beneficiary of the policy, Provident Mutual

revocably changed the beneficiary of the policy to the petitioner's executors or administrators. By the same request, the petitioner agreed to a change in the assignment clause of the general provisions of the policy. The revised assignment clause provided:

ASSIGNMENTS. This Policy may be assigned by the joint act of all parties in interest other than a revocably designated beneficiary, and the interest of any such beneficiary shall be subject to any assignment so made. All assignments shall be subject to any indebtedness on this Policy. No assignment of this Policy shall be of any effect so far as the Company may be concerned, until the original or a duplicate thereof is filed at its Home Office. The Company assumes no responsibility for the validity of any assignment.

On December 20, 1956, 35 days before the policy would have matured into a fully paid endowment policy, the petitioner executed an assignment of all his right, title, and interest in the policy to the Fulton National Bank of Atlanta for a consideration of $9,953.60. This amount was deposited to petitioner's account in the bank. The assignment agreement provided as follows:

For value received, I hereby assign, transfer and set over unto The Fulton National Bank of Atlanta of Atlanta, Georgia, executors, administrators, successors or assigns, all my right, title and interest in Policy No. 339290, issued by Provident Mutual Life Insurance Company of Philadelphia on the life of Bolling Henry Jones, Jr., including all supplementary agreements which may be attached to said Policy, hereby giving and granting unto the said assignee the right to receive all sums of money payable thereunder and the right to exercise all rights, powers, options and privileges contained therein, including, without limiting the generality of the foregoing, the right to obtain from said Insurance Company such advances or loans on account of said Policy as may be available from time to time and the right to surrender said Policy at any time to said Insurance Company for its cash value.

Payment of $10,013.60 was made by Provident Mutual to the bank on the maturity of the policy, January 24, 1957. The $10,013.60 payment consisted of the $10,000 face amount of the policy and a final dividend of $13.60. The excess of the amount received ($10,013.60) over the amount paid by the bank to petitioner ($9,953.60) was reported by the bank as ordinary income.

The cash surrender value of the policy as of December 20, 1956, the date of the assignment, was $9,971.20. Petitioner's basis in the policy, determined by the amount of the net premiums paid (i.e., gross premiums less dividends), was $7,689.90 at the date of the assignment. Petitioner paid total premiums of $9,208.50 on the policy.

The assignment of the policy to the bank was motivated solely by tax-saving considerations, namely, to derive a long-term capital gain rather than ordinary income. Petitioner reported on his 1956 Federal income tax return the entire amount realized ($2,263.70) as a long-term capital gain. Respondent determined that such gain was ordinary income.

OPINION.

As in *Percy W. Phillips*, 30 T.C. 866, rev. 275 F. 2d 33 (C.A. 4, 1960), we are again faced with the question of whether a taxpayer can sell an endowment insurance policy shortly before its maturity date and then be allowed to consider the gain on the sale as capital gain rather than ordinary income. The petitioner says, and we agree, that the factual pattern here is substantially similar to the *Phillips* case. We there held that the amount received over and above the cost of the policy was an increase in the value of a capital asset and therefore taxable as a long-term capital gain. The Court of Appeals for the Fourth Circuit reversed us.

Petitioner asserts that we correctly decided the *Phillips* case. Respondent disagrees and relies upon two principal points:

(1) The assignment transaction was not a real and bona fide sale of the policy but merely a transfer to an intermediary for collection, and was thus devoid of any real purpose other than tax avoidance.

(2) The petitioner may not convert what would otherwise have been received by him as ordinary income by casting the transaction as a sale of a capital asset. Consequently, the increment (the excess of the amount received over the petitioner's cost) is taxable as ordinary income.

We can dispose of the first point summarily by saying, on the authority of *Percy W. Phillips, supra*, and *Arnfeld v. United States*, 163 F. Supp. 865 (Ct. Cl. 1958), certiorari denied 359 U.S. 943 (1959), that the assignment in question was real and bona fide in every respect. Petitioner surrendered all his right, title, and interest in the policy to the bank for adequate consideration. All vestiges of ownership were transferred, the petitioner retained no control, direct or indirect, over the policy, and the bank realized a profit on the transaction.

The crucial issue here centers on whether the petitioner can convert into capital gain, by an assignment, that portion of the increased value of the endowment policy which had already accrued up to the time of the assignment. After further review and consideration, we are now convinced that the Court of Appeals properly reversed our decision in *Phillips*. Looking at its opinion, we observe that the Court of Appeals stated:

It is illogical to assume that Congress intended to permit, even through the medium of a bona fide sale, the conversion of what is the equivalent of ordinary income into a capital gain in light of the language of § 22(b)(2)(A). The teachings of Lake and Arnfeld preclude us from so holding.

The section of the statute applicable here is section 72(e), I.R.C. 1954, which contains provisions similar to section 22(b)(2)(A), I.R.C. 1939. It specifically provides that any amount received under an endowment contract, *which is not received as an annuity*, shall be

included in gross income to the extent that it (when added to amounts previously received under the contract which were excludable from gross income) exceeds the aggregate premiums or other consideration paid. Thus, it is clear from the plain and unambiguous language of the statute that the problem in this case is not affected by petitioner's receipt of so-called dividends, either in the form of credits against premiums due or as direct cash payments. By applying the provisions of the statute to the facts here, we see that the petitioner could have received on December 20, 1956, pursuant to the terms of the endowment contract, $9,971.20 as cash surrender value. When you subtract from that figure the net premiums paid ($9,208.50 minus $1,532.-20), the difference of $2,294.90 is the amount which would have been includable in petitioner's gross income.

Since the increased value of the endowment contract which had accrued up to the time of the assignment would have been ordinary income to petitioner upon surrender of the policy, the realization thereof upon the assignment to the bank was merely the anticipation of ordinary income and must be taxed accordingly. Cf. *Hort v. Commissioner*, 313 U.S. 28 (1941), and *Commissioner v. P. G. Lake, Inc.*, 356 U.S. 260 (1958). We hold that the entire gain ($2,263.70) realized on the assignment was ordinary income.

Reviewed by the Court.

*Decision will be entered for the respondent.*