*Decision will be entered under Rule 50.*

W. STANLEY BARRETT AND IRENE B. BARRETT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4692-62. Filed August 31, 1964.

*Andrew P. Quinn* and *Richard F. Canning*, for the petitioners.
*J. Frost Walker, Jr.*, for the respondent.

OPINION

SCOTT, *Judge:* Respondent determined a deficiency in the income tax of petitioners for the taxable year 1960 in the amount of $9,125 and an addition to the tax under section 6654 of the Internal Revenue Code of 1954 for underpayment of estimated tax in the amount of $83.95.

The two issues raised by the pleadings which remain for decision are:

█ Whether petitioner W. Stanley Barrett realized long-term capital gain or ordinary income on the surrender or exchange of certain endowment policies at their maturity for paid-up life insurance policies.

■ Whether respondent is estopped from taking the position that the gain which petitioners realized on the exchange is taxable as ordinary income because of a letter from respondent's office addressed to one of petitioners in response to a request for a ruling.

All of the facts have been stipulated and are found accordingly.

Petitioners, husband and wife residing in Providence, R.I., filed a joint Federal income tax return for the calendar year 1960 with the district director of internal revenue at Providence, R.I.

W. Stanley Barrett, hereinafter referred to as petitioner, was the owner of and the insured under 12 endowment policies, 8 issued by the Travelers Insurance Co. and 4 by Massachusetts Mutual Life Insurance Co., each maturing during the year 1960.

Each of the policies contained provisions whereunder upon maturity of the policy the insured had the right to elect one of the following modes of settlement: (1) A monthly income payable to the insured during his lifetime; (2) a lump-sum cash payment; (3) a paid-up life insurance policy; (4) a lump-sum cash payment and a paid-up life insurance policy on the life of the insured.

A letter dated June 5, 1959, was drafted by petitioner's counsel, signed by petitioner, and mailed on the same date to the Commissioner of Internal Revenue. This letter set forth certain facts with respect to one of petitioner's insurance policies issued by Massachusetts Mutual Life Insurance Co., and assumptions as to the tax consequences of the various elections if he were living on the date the policy matured as an endowment policy. With respect to the election to accept a paid-up life insurance policy and the election to accept a lump-sum cash payment and a paid-up life insurance policy, the letter stated:

(c) If I accept in lieu of the deferred income a paid-up policy payable at death, I will experience no income and no capital gain because the exchange will be made within the terms of the policy and will not be a matter of negotiation with the insurance company.

(d) If I accept in lieu of the deferred income payable under the policy a cash payment and a paid-up contract payable at death, I will experience a capital gain in an amount equal to the difference between the amount of the cash payment plus the amount it would cost me to purchase such a paid-up policy on the date that the policy becomes an endowment policy and the net amount of the premiums paid (gross premiums paid less dividends received).

The concluding paragraph of this letter stated: "I respectfully request a ruling as to the tax consequences of (a), (b), (c) and (d) enumerated above."

The statements of facts contained in the letter of June 5, 1959, with respect to the policy issued by Massachusetts Mutual Life Insurance Co. apply also to the remaining 11 policies in issue, except for dates and amounts.

Under date of July 15, 1959, a reply from the Office of the Commis-

sioner of Internal Revenue was issued, signed by the Chief, Individual Income Tax Branch. The reply stated in part as follows:

This is in reply to your letter of June 5, 1959, in which you request a ruling relative to the optional provisions incorporated in your insurance policy.

\* \* \* \* \* \* \*

In the absence of a copy of the insurance policy involved, this office is not in a position to make a specific ruling on your question. Your attention is called to section 7 of Rev. Rul. 54–172, C.B. 1954–1, 394, a reprint of which is enclosed.

We are furnishing you the following general information with the understanding that it does not constitute a specific ruling.

\* \* \* \* \* \* \*

The Internal Revenue Service has held that if an insured exercises his right under an option to receive a paid-up life insurance policy in lieu of a cash payment, he in effect exchanges one kind of a policy for another and under certain circumstances realizes taxable gain as a result of such exchange. A policy is considered surrendered for a different type of policy when a supplementary insurance contract is issued or the original policy is amended or endorsed in such a manner that the policyholder is insured under a different type of policy. Revenue Ruling 54–264, C.B. 1954–2, 57. Under the provisions of section 1.1035–1(c) of the Income Tax Regulations, any gain or loss will be recognized in a transaction involving the exchange of an endowment contract or an annuity contract for a life insurance contract.

If the insured surrenders an endowment policy, pursuant to an election, in exchange for cash and a paid-up life insurance policy, he realizes taxable income. The amount of such taxable income is the excess of (1) the cash plus the value of the policy received over (2) the premiums paid, reduced by any dividends paid or credited to the policy holder. The phrase "value of the policy received" means the same price that any person of the same age, sex and condition of health as the taxpayer would have to pay for a similar policy with the same company on the date the policy is surrendered. The cash surrender value of the policy is not to be used for this purpose. This principle applies to any type of endowment policy or life insurance policy surrendered in exchange for cash and a different type of policy.

If you still desire a specific ruling, please furnish the information requested as explained in section 7 of the reprint of Rev. Rul. 54–172.

Subsequent to receipt of the respondent's letter dated July 15, 1959, petitioner consulted his counsel, who examined the letter and advised him.

Petitioner's counsel submitted a memorandum to petitioner under date of January 6, 1960, enclosing a summary of the estimated taxes payable under the various options of petitioner's endowment policies which were to mature in 1960. The memorandum attached was a tabulation dated December 31, 1959, entitled "Summary re Endowment Policies." The tabulation showed computations of tax under designations "Lump-sum," "Paid-up Policy," and "Cash and Paid-up Policy." Under the designations "Lump-sum" and "Cash and Paid-up Policy" the amounts on which tax was computed were shown as "Ordinary Income" and tax was computed at 60 percent thereof. Under the designation "Paid-up Policy" the amounts on which tax

was computed were shown as "Capital Gain" and tax was computed at 25 percent.

Effective upon maturity of each of the endowment policies here in issue, and within the taxable year 1960, petitioner elected with respect to each such policy to surrender that policy and did so surrender each such policy to the respective insurance company, and effective on the respective maturity date of each such policy received from the respective insurance company, a paid-up life insurance policy. Petitioners reported the resulting gain on their joint income tax return for 1960 as a long-term capital gain as follows:

Replacement cost of paid-up life insurance policies received in exchange for endowment policies_____ $72,184.14

Cost of endowment policies (premiums paid less dividends credited) __ 49,948.47

Gain _____ 22,235.67

Respondent in his notice of deficiency determined that the $22,235.67 gain computed by petitioner on surrender of the endowment policies constituted ordinary income instead of long-term capital gain and recomputed petitioners' income tax accordingly under the provisions of section 72(e)(3) of the Internal Revenue Code of 1954,[1] providing for a limitation of tax on receipt of a lump sum under an annuity, endowment, or life insurance contract.

Petitioners in their petition assigned as errors respondent's determination that the gain realized by petitioners upon the exchange of the endowment policies was taxable as ordinary income rather than capital gain and respondent's refusal to concede that he was estopped from taking the position that such gain is taxable as ordinary income in view of a letter issued to petitioners. In his opening statement when the stipulation of facts was submitted and an additional fact stipulated orally, petitioner's counsel stated the issues to be the same two issues covered by the assignment of errors in the petition.

On brief, petitioners contend, in addition, that the surrender of the endowment policies in exchange for paid-up life insurance policies did not result in the realization of any taxable capital gain or ordinary income. This issue is not properly before us since it has not been raised by any pleadings or amended pleadings or at the trial. Had petitioner properly raised this issue, we would consider it to be without merit. Section 1035 [2] provides that no gain or loss shall be recog-

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.
[2] SEC. 1035. CERTAIN EXCHANGES OF INSURANCE POLICIES.
  (a) GENERAL RULES.—No gain or loss shall be recognized on the exchange of—
    (1) a contract of life insurance for another contract of life insurance or for an endowment or annuity contract; or
    (2) a contract of endowment insurance (A) for another contract of endowment insurance which provides for regular payments beginning at a date not later than the

nized upon certain exchanges of insurance policies. The exchange of an endowment contract or an annuity contract for a life insurance contract is not included among the exchanges with respect to which gain or loss is not recognized, and the respondent's regulations specifically provide that gain or loss on such an exchange is recognized.[3] This regulation is a reasonable interpretation of the statute. Prior to the enactment of the Internal Revenue Code of 1954, the exchange of an endowment policy for a life insurance policy was recognized as a taxable transaction. *Charles Cutler Parsons*, 16 T.C. 256 (1951).

Petitioners argue that no gain or loss should be recognized because they merely selected one of four possible options under the terms of the policy and that although new policies of paid-up life insurance were issued by the respective companies, there was no exchange of one policy for another inasmuch as the new life insurance polices were selected under the terms of the old policies and not as a result of bargaining with the company. This argument is directly contrary to the facts as stipulated that petitioner "surrendered each such policy to the respective insurance company, and effective on the respective maturity date of each such policy received from the respective insurance company a paid-up life insurance policy." This stipulation is clear

date payments would have begun under the contract exchanged, or (B) for an annuity contract; or

(3) an annuity contract for an annuity contract.

(b) DEFINITIONS.—For the purpose of this section—

(1) ENDOWMENT CONTRACT.—A contract of endowment insurance is a contract with a life insurance company as defined in section 801 which depends in part on the life expectancy of the insured, but which may be payable in full in a single payment during his life.

(2) ANNUITY CONTRACT.—An annuity contract is a contract to which paragraph (1) applies but which may be payable during the life of the annuitant only in installments.

(3) LIFE INSURANCE CONTRACT.—A contract of life insurance is a contract to which paragraph (1) applies but which is not ordinarily payable in full during the life of the insured.

[3] Sec. 1.1035–1, Income Tax Regs. Certain exchanges of insurance policies.

Under the provisions of section 1035 no gain or loss is recognized on the exchange of:

(a) A contract of life insurance for another contract of life insurance or for an endowment or annuity contract (section 1035(a)(1));

(b) A contract of endowment insurance for another contract of endowment insurance providing for regular payments beginning at a date not later than the date payments would have begun under the contract exchanged, or an annuity contract (section 1035 (a)(2)); or

(c) An annuity contract for another annuity contract (section 1035(a)(3)), but section 1035 does not apply to such exchanges if the policies exchanged do not relate to the same insured. The exchange, without recognition of gain or loss, of an annuity contract for another annuity contract under section 1035(a)(3) is limited to cases where the same person or persons are the obligee or obligees under the contract received in exchange as under the original contract. This section and section 1035 do not apply to transactions involving the exchange of an endowment contract or annuity contract for a life insurance contract, nor an annuity contract for an endowment contract. In the case of such exchanges, any gain or loss shall be recognized. In the case of exchanges which would be governed by section 1035 except for the fact that the property received in exchange consists not only of property which could otherwise be received without the recognition of gain or loss, but also of other property or money, see section 1031 (b) and (c) and the regulations thereunder. Such an exchange does not come within the provisions of section 1035. Determination of the basis of property acquired in an exchange under section 1035(a) shall be governed by section 1031(d) and the regulations thereunder.

that each endowment policy was exchanged for a paid-up life insurance policy. There is nothing in the record to give any contrary inference but in fact the exhibits stipulated in the record support this interpretation of the stipulated facts.

Petitioners' next argument is that even if the transaction is held to be a taxable event, they properly reported the gain therefrom on their 1960 income tax return as capital gain rather than ordinary income. Petitioners argue that an insurance policy is property within the meaning of the income tax law, that such a policy is a capital asset within the meaning of section 1221, and that gain on the exchange of a capital asset held for more than 6 months is long-term capital gain under section 1222(3).

This argument is similar to the contention which has been rejected in numerous cases that the gain realized upon the sale of an endowment or annuity policy shortly before its maturity date is long-term capital gain. *Bolling Jones, Jr.*, 39 T.C. 404 (1962) ; *Estate of Gertrude H. Crocker*, 37 T.C. 605 (1962) ; *Harry Roff*, 36 T.C. 818 (1961), affd. 304 F. 2d 450 (C.A. 3, 1962) ; *Commissioner* v. *Phillips*, 275 F. 2d 33 (C.A. 4, 1960) ; and *Arnfeld* v. *United States*, 163 F. Supp. 865 (Ct. Cl. 1958). Cf. *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260 (1958), and *Gallun* v. *Commissioner*, 327 F. 2d 809 (C.A. 7, 1964), affirming a Memorandum Opinion of this Court.

Section 72(e)[4] specifically provides for the extent to which an amount received under an annuity or endowment contract, which is not received as an annuity, shall be included in gross income. Under the provisions of this section, the excess of the amount received over the unrecovered cost of an endowment policy is includable in gross income. Had petitioner received cash for his endowment policies, the gain realized would meet the precise words of this section. In lieu of cash, petitioner received life insurance policies of an aggregate agreed

---

[4] SEC. 72(E). AMOUNTS NOT RECEIVED AS ANNUITIES.—

(1) GENERAL RULE.—If any amount is received under an annuity, endowment, or life insurance contract, if such amount is not received as an annuity, and if no other provision of this subtitle applies, then such amount—

(A) if received on or after the annuity starting date, shall be included in gross income ; or

(B) if subparagraph (A) does not apply, shall be included in gross income, but only to the extent that it (when added to amounts previously received under the contract which were excludable from gross income under this subtitle or prior income tax laws) exceeds the aggregate premiums or other consideration paid.

For purposes of this section, any amount received which is in the nature of a dividend or similar distribution shall be treated as an amount not received as an annuity.

(2) SPECIAL RULES FOR APPLICATION OF PARAGRAPH (1).—For purposes of paragraph (1) the following shall be treated as amounts not received as an annuity :

(A) any amount received, whether in a single sum or otherwise, under a contract in full discharge of the obligation under the contract which is in the nature of a refund of the consideration paid for the contract ; and

(B) any amount received under a contract on its surrender, redemption or maturity.

In the case of any amount to which the preceding sentence applies, the rule of paragraph (1)(B) shall apply (and the rule of paragraph (1)(A) shall not apply).

value of $72,184.14 in exchange for his endowment policies. The parties also agree that the aggregate cost to petitioner of the endowment policies surrendered was $49,948.47. The difference of $22,235.67 is the amount which is includable in petitioners' gross income under section 72(e) unless that section is inapplicable because petitioner received life insurance policies instead of cash. The fact that petitioner received life insurance policies instead of cash does not cause the gain to become capital gain. Cf. *Charles Outler Parsons, supra,* and *Bolling Jones, Jr., supra.* The gain petitioner realized on the exchange of his endowment policies for life insurance policies is ordinary income.[5]

Petitioner next contends that respondent is estopped from denying that the income on the surrender or exchange of the endowment policies is capital gain. Petitioner bases this contention upon his letter to the Commissioner, dated June 5, 1959, and the reply from the Office of the Commissioner, dated July 15, 1959, the pertinent portions of which are included in our findings.

Petitioner argues that in his letter to respondent he proposed four alternative courses of action and requested a ruling as to the tax consequences of each. His statements of his understanding of the tax effect of the last two of his proposed alternatives were in substance that if he should accept in lieu of the deferred income a paid-up life insurance policy, he would realize neither income nor capital gain; and if he should accept in lieu of the deferred income a paid-up life insurance policy plus a cash payment, he would realize a capital gain. Petitioner contends that he was misled by respondent's reply to his request for a ruling in that respondent, in discussing the exercise of the option to receive a paid-up life insurance policy in lieu of a cash payment, stated that the taxpayer "under certain circumstances realizes taxable gain as a result of such exchange."

Petitioner stated that he interpreted the use of the term "taxable gain" to mean "capital gain" because respondent, in discussing the exercise by a taxpayer of the option to receive cash and a paid-up life insurance policy, stated that "he realizes taxable income." This argument must be viewed in the light of the fact that petitioner's letter was drafted by his attorneys, and petitioner sought the advice of his attorneys after receiving his reply, although what advice the attorneys gave petitioner is not shown. Under these circumstances an interpretation of the phrase "taxable gain" to mean "capital gain" is not a reasonable interpretation.

The definition of gross income in section 61(a) specifically refers

---

[5] Petitioner attempts to distinguish *Harry Roff,* 36 T.C. 818 (1961), affd. 304 F. 2d 450 (C.A. 3, 1962), from the instant case because the policy there involved was an annuity policy and not an endowment policy. We have not discussed this contention since *Bolling Jones, Jr.,* 39 T.C. 404 (1962), involving an endowment policy reaches the same conclusion as *Harry Roff, supra.*

to such gross income as including "gains derived from dealings in property." In cases involving taxability of transactions in insurance policies, courts have used the words "income" and "gain" more or less synonymously. *Harry Roff, supra; Arnfeld* v. *United States, supra;* and *Rosen* v. *United States*, 288 F. 2d 658, 660, 662 (C.A. 3, 1961).

Assuming that the letter from respondent's office was ambiguous in the minds of petitioner and his counsel, it was incumbent upon them to inquire further of respondent before proceeding with their doubtful interpretation of the letter.

The letter of July 15, 1959, contains a statement that in the absence of a copy of the insurance policy involved, no specific ruling on the question presented would be given. After setting forth the general information which the letter was stated to contain, it was again stated that this information did not constitute a specific ruling. Respondent never issued a ruling to petitioner.

In view of our conclusion that respondent did not issue a ruling to petitioner that the gain on the surrender of the endowment policies for life insurance policies would constitute capital gain, it is unnecessary to discuss whether the other essential elements of estoppel would be present here had such a ruling been issued. It is enough to say respondent's letter is insufficient to establish estoppel.

The addition to the tax under section 6654 of the Internal Revenue Code of 1954 is not contested except as it is affected by the amount of the deficiency determined.

*Decision will be entered for respondent.*