ABRAM NESBITT 2D AND GERALDINE T. NESBITT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1960–63. Filed February 11, 1965.

*Frank Townend*, for the petitioners.
*S. T. Reiner*, for the respondent.

### OPINION

BLACK, *Judge:* The Commissioner has determined a deficiency in the income tax of petitioners for the year 1958 of $14,394.94. The deficiency is due to several adjustments to the taxable income as disclosed by the joint return of petitioners for the year 1958. Only one of the adjustments made by the Commissioner is in issue in this proceeding and that is adjustment "(b) Gain on sale of Endowment Policies $25,755.00." That adjustment is explained in the deficiency notice as follows:

(b) The gain on the sale of three endowment policies in the total amount of $25,755.00 reported as a long-term capital gain is determined to be ordinary income as defined by section 72(e) of the Internal Revenue Code of 1954. It is held that this is not within the purview of section 1221 of the Internal Revenue Code of 1954.

Petitioners contest this adjustment of the Commissioner by appropriate assignments of error.

At the hearing a stipulation of facts and supplemental stipulation of facts, together with exhibits attached, were filed and these are incorporated herein by this reference. We shall summarize the facts stated therein as follows.

Petitioners Abram Nesbitt 2d and Geraldine T. Nesbitt are husband and wife and reside at R.F.D. No. 1, Dallas, Pa. Abram Nesbitt 2d will sometimes hereinafter be referred to as petitioner.

Petitioners filed their joint Federal income tax return for the taxable year 1958 with the district director of internal revenue at Scranton, Pa.

During the year 1958 petitioner was a banker and a farmer. His principal source of income was, however, from dividends and distributions from three trusts.

Petitioners kept their books and filed their income tax returns on a calendar year basis and a cash receipts and disbursements method of accounting.

Petitioner purchased three 20-year level premium endowment policies from the Mutual Life Insurance Co. of New York, hereinafter sometimes referred to as the insurance company, as follows:

| | | | |
|---|---|---|---|
| Policy No | 5,388,380 | 5,388,381 | 5,388,382 |
| Date of issue | 7/15/38 | 7/15/38 | 7/15/38 |
| Face amount of policy | $100,000 | $50,000 | $25,000 |
| Date of maturity | 7/15/58 | 7/15/58 | 7/15/58 |
| Date of assignment | 7/11/58 | 7/11/58 | 7/11/58 |
| Maturity value of policy | $116,729.34 | $58,364.67 | $29,184.84 |
| Amount received upon assignment | $116,500 | $58,200 | $29,100 |
| Total premiums paid (cost) | 101,740 | 50,870 | 25,435 |
| Difference between cost and amount received on assignment | 14,760 | 7,330 | 3,665 |

On July 11, 1958, petitioner assigned the three policies to the Nesbitt Memorial Hospital under a standard insurance company assignment of policy for a total consideration of $203,800. Petitioner realized an excess of assignment price over cost in the total amount of $25,755. The assignee of the insurance policies received the proceeds of the matured endowments from the insurance company as follows:

| | Policy No.— | | |
|---|---|---|---|
| | 5,388,380 | 5,388,381 | 5,388,382 |
| Face amount | $100,000.00 | $50,000.00 | $25,000.00 |
| Dividend additions | 14,226.00 | 7,113.00 | 3,559.00 |
| Cash dividend | 1,018.34 | 509.17 | 254.59 |
| Termination dividend | 1,485.00 | 742.50 | 371.25 |
| Total | 116,729.34 | 58,364.67 | 29,184.84 |

Petitioners reported the excess of the assignment price over the cost of the policies as a long-term capital gain. Respondent determined that said excess was ordinary income.

Under section 2 of each policy petitioner had four options as to the payment of dividends earned. These options read as follows:

Section 2. Annual Dividends.

The share of the divisible surplus accruing on this Policy shall be allotted as a dividend annually on each anniversary of its date, the first such dividend being payable only if any premium due on the first anniversary be duly paid.

Each such dividend may be either:—

1. Used to purchase a paid-up participating addition to the sum insured, herein called dividend addition, which shall be automatically added on the date of allotment and will continue in force unless and until one of the other options be duly elected; or,

2. Paid in cash; or,

3. Used toward payment of any premium if the remainder of the premium is duly paid; or,

4. Deposited with the Company at interest within ninety days from date of allotment (called dividend deposit). Interest will be credited at such rate as

may be determined by the Company, but never less than three per cent a year, and will be added to existing dividend deposits annually. Dividend deposits existing at the maturity of this Policy shall be then payable to the payee of the face amount.

At any time, provided there is no premium more than three months in default, any dividend additions may be surrendered for the full reserve thereon or any accumulated dividend deposits may be withdrawn.

Petitioner elected the first option "to purchase a paid-up participating addition to the sum insured, herein called dividend addition, which shall be automatically added on the date of allotment and will continue in force unless and until one of the other options be duly elected." Section 2 further provided "At any time * * * any dividend additions may be surrendered for the full reserve thereon or any accumulated dividend deposits may be withdrawn." The amount of dividend additions credited to each policy prior to the year 1958 and the reserve value for which such dividend additions could have been surrendered are shown by the statement of the insurance company in a letter dated May 27, 1964, which reads as follows:

Pursuant to your request as set forth in your letter of May 19, 1964, the Dividend Additions to the credit of these policies on December 31, 1957, and the reserve value thereof on that date, were as follows:

| Policy | Dividend Additions | Reserve Value |
| --- | --- | --- |
| 5388380 | $14,226.00 | $14,003.51 |
| 5388381 | 7,113.00 | 7,001.75 |
| 5388382 | 3,559.00 | 3,503.34 |

Mr. Nesbitt could have surrendered the Dividend Additions for the values shown above on December 31, 1957 under Section 2 of these policies.

The dividends paid or allotted on each policy for the years 1939 to 1957, inclusive, are shown by the statement of the insurance company as follows:

| Year | Policy No.— | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | 5388380 | | 5388381 | | 5388382 | |
| | Dividend | Dividend added | Dividend | Dividend added | Dividend | Dividend added |
| 1939 | $631.00 | $1,047 | $315.50 | $523 | $157.75 | $262 |
| 1940 | 717.91 | 1,162 | 358.96 | 581 | 179.48 | 291 |
| 1941 | 577.14 | 912 | 288.57 | 456 | 144.29 | 228 |
| 1942 | 570.00 | 879 | 285.00 | 439 | 142.50 | 220 |
| 1943 | 566.00 | 849 | 283.00 | 425 | 141.50 | 212 |
| 1944 | 556.00 | 817 | 278.00 | 409 | 139.00 | 204 |
| 1945 | 537.00 | 768 | 268.50 | 384 | 134.25 | 192 |
| 1946 | 533.00 | 741 | 266.50 | 370 | 133.25 | 185 |
| 1947 | 529.00 | 719 | 264.50 | 360 | 132.25 | 180 |
| 1948 | 529.00 | 698 | 264.50 | 349 | 132.25 | 175 |
| 1949 | 235.00 | 303 | 117.50 | 152 | 58.75 | 76 |
| 1950 | 229.00 | 286 | 114.50 | 143 | 57.25 | 72 |
| 1951 | 346.00 | 422 | 173.00 | 211 | 86.50 | 106 |
| 1952 | 343.00 | 408 | 171.50 | 204 | 85.75 | 102 |
| 1953 | 438.00 | 508 | 219.00 | 254 | 109.50 | 127 |
| 1954 | 693.00 | 776 | 346.50 | 388 | 173.25 | 194 |
| 1955 | 879.30 | 958 | 439.65 | 479 | 219.83 | 240 |
| 1956 | 943.25 | 1,000 | 471.63 | 500 | 235.82 | 250 |
| 1957 | 944.25 | 973 | 472.13 | 486 | 236.07 | 243 |
| Total | ---------- | 14,226 | ---------- | 7,113 | ---------- | 3,559 |

In their original petition, petitioners raised only the issue that the Commissioner erred in his determination that the profits from the sale of the three endowment insurance policies described in our Findings of Fact to the Nesbitt Memorial Hospital resulted in ordinary income rather than long-term capital gain. However, at the hearing petitioners were permitted to file and did file an amendment to their petition in which they alleged as follows:

(b) The Commissioner of Internal Revenue erred in not reducing the amount of petitioner's gain on the sale of Endowment Policies of $25,755.00 by the amount credited to petitioner's account prior to 1958 and constructively received by petitioner during each of the years in which he owned the policies prior to 1958.

## Issue 1

As to this issue raised in the original petition and which we have designated as issue 1, petitioner urges that the decision of the Tax Court in *Percy W. Phillips*, 30 T.C. 866 (1958), was correct and should still be followed. However, the U.S. Court of Appeals for the Fourth Circuit reversed our decision, see *Commissioner* v. *Phillips*, 275 F. 2d 33 (1960). Since then we have agreed that the Fourth Circuit was correct in reversing the *Phillips* case and have declared that we would hereafter follow it in its reversal, see *Bolling Jones, Jr.*, 39 T.C. 404 (1962).

Therefore, on issue 1, we decide for the respondent.

## Issue 2

Petitioner urges an alternative contention in the event that we decide issue 1 against him. That issue, which we have designated as issue 2, was stated in the amendment to petitioners' original petition which we have already quoted and it is unnecessary to repeat it here. In support of this alternative contention petitioner relies upon *Theodore H. Cohen*, 39 T.C. 1055 (1963). In the *Cohen* case it was held, among other things, that interest on dividends which Cohen had left with the insurance company to accumulate and which interest was credited to Cohen's account and could have been drawn out in cash by him when credited was income to him in the year when credited and was not income to him in the year when the endowment policy was sold. The reason it was held to be income to him in the year when credited to his account was that it was constructively received in that year. In our opinion in the *Cohen* case, we said:

With regard to amounts earned by petitioner on dividends left on deposit with the respective insurance companies, we find that such amounts are properly denoted as interest[5] and, upon the periodic crediting of such interest to the account of the petitioner by the respective insurance companies, was subject to his unfettered right to withdraw it. * * * [Footnote omitted.]

Petitioner concedes that the option that he selected in his policies as to dividends was not the same as was selected in the *Cohen* case, but he contends that the same rule as to constructive receipt should be applied here as we applied in the *Cohen* case. Petitioner states his contention in this respect as follows:

The petitioner, during the 19 years prior to 1958, elected Option No. 1 as to the use of annual dividends as provided in Section 2 of each policy and the dividends were used to purchase "a paid-up participating addition to the sum insured, herein called dividend addition." Under the unnumbered paragraph following Paragraph No. 4 in Section 2, the policy provided that "any dividend additions may be surrendered for the full reserve thereon or any accumulated dividend deposits may be withdrawn."

The dividends in the 19 years prior to 1958 amounted to $18,894.53. The reserve value of the "dividend additions" as of December 31, 1957 was $24,508.60, an increase or gain of $5,614.07 over the amount of dividends received. The reserve value of $24,508.60 could have been withdrawn by the petitioner in 1957. * * *

Pursuant to the provisions of each of the policies, petitioner had the right to utilize the annual dividends paid on the policies in any of four different options: First, he could use the annual dividends to purchase a paid-up participating addition to the sum insured; second, he could elect to have the dividend paid to him in cash; third, the dividend could have been used toward the payment of any premium; and fourth, it could have been deposited with the company to draw interest. Petitioner, as our findings of fact show, elected to utilize the first option, namely, to use the dividends to purchase additional paid-up life insurance. This additional life insurance is referred to in the policy as a dividend addition. This dividend addition is actually a fully paid life insurance policy equivalent to a single-premium policy. Consistent with the provisions of the principal policies, there was a cash surrender value for the dividend additions. The cash surrender value was referred to as a reserve under section 9 of each of the insurance contracts. It has been stipulated that the dividend additions to the credit of these policies on December 31, 1957, was $24,898 and the reserve value was $24,508.60.

With the foregoing in mind, we shall now consider the case of *Theodore H. Cohen, supra,* upon which petitioner relies in support of his alternative contention. In the *Cohen* case the Tax Court distinguished between cash surrender values and interest received on dividends left on deposit with the insurance company. The interest was held to have been constructively received when credited to the taxpayer's account—the cash surrender value of the policies was held not to have been constructively received.

In the instant case petitioner chose option 1 provided in section 2 of each policy and elected to apply the dividends to "purchase a paid-up participating addition to the sum insured" called a dividend addition (as distinguished from a dividend deposit under option No. 4). The policy further provided that "At any time * * * any dividend additions may be surrendered for the full reserve thereon or any accumulated dividend deposits may be withdrawn." Herein each dividend was automatically converted into a new paid-up insurance policy which had to be surrendered in order to receive the reserve value.

It seems to us that in the *Cohen* case we have already in effect held against petitioner's alternative contention. In that case as to the cash surrender value of the policies we said:

In the case before us we hold that the petitioner's right to receive the cash surrender value including periodic increments thereof was subject to such "substantial restrictions" as to make inapplicable the doctrine of constructive receipt. Petitioner would have been required to surrender his entire investment in the policies in order to realize that income. It has been held that there is no constructive receipt of income where one must surrender a valuable right in order to realize it. [Citing cases.] * * *

It is true, of course, that the facts in the *Cohen* case in that respect are different from the facts in the instant case. Here petitioner would not have to surrender all his investments in the policies in order to receive the reserve value of the dividend additions to the policies. He would only have had to surrender the dividend additions on December 31, 1957, stipulated to be $24,898, to receive the reserve value which was $24,508.60. The fact that petitioner would have had to surrender these dividend additions to his policies to have received the reserve value, it seems to us would make inapplicable the doctrine of constructive receipt. As we said in the *Cohen* case, "It has been held that there is no constructive receipt of income where one must surrender a valuable right in order to realize it."

As we have already said, in order to realize the reserve value of the dividend additions to his policies in the instant case, petitioner would not have been required to surrender his entire investment in the policies as was Cohen in the *Cohen* case. However, petitioner here would have been required to surrender the accumulated dividend additions to the credit of his policies of insurance in order to collect the reserve value. This, it seems to us, would bring into play the principle which we held applicable in the *Cohen* case as to the cash surrender value of the policies and would prevent the reserve value from having been constructively received on December 31, 1957.

We hold against petitioner on this alternative contention.

*Decision will be entered under Rule 50.*