Edwin A. Gallun and Jane W. Gallun v. Commissioner.Gallun v. CommissionerDocket No. 89500.United States Tax CourtT.C. Memo 1963-167; 1963 Tax Ct. Memo LEXIS 177; 22 T.C.M. (CCH) 798; T.C.M. (RIA) 63167; June 14, 1963Richard S. Gibbs and W. J. Roper for the petitioners. Vernon R. Balmes for the respondent. DAWSONMemorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency in the income tax of the petitioners for the calendar year 1956 in the amount of $19,827.19. Petitioners have conceded the issue raised in their petition with respect to the treatment of a loss sustained by them during the taxable year on an investment in a limited partnership. The two issues remaining for decision are: 1. Whether the petitioner, Edwin A. Gallun, realized long-term capital gains or*179 ordinary income upon assignments made by him of four paid-up life insurance policies to A. F. Gallun & Sons Corporation. 2. If the petitioner realized ordinary income, whether the increments (net gain over cost) on the policies are fully taxable in 1956, the year in which the assignments were made, or whether the petitioner is entitled to use the averaging provisions of section 72(c)(3), Internal Revenue Code of 1954, so that the gain is spread ratably over 1956 and the two preceding years. Findings of Fact Most of the facts have been stipulated by the parties. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Edwin A. Gallun and Jane W. Gallun will be referred to jointly as "petitioners." Edwin A. Gallun individually will be called "petitioner." The petitioners were divorced by a decree entered on December 17, 1957, in Washoe County, Nevada. Petitioners filed their joint U.S. individual income tax return for the year 1956 with the district director of internal revenue, Milwaukee, Wisconsin. They sustained no net short-term capital loss during that year. During 1956 petitioner was the president, principal*180 executive officer, and owner of 37.1 percent of the outstanding capital stock of A. F. Gallun & Sons Corporation, which is a Wisconsin corporation engaged in the leather tanning business with its principal office at 1818 North Water Street, Milwaukee, Wisconsin. The petitioner purchased and was the owner of four life insurance policies on his own life as follows: KansasMutualNorthwesternNorthwesternCity LifeBenefitMutual LifeMutual LifeIns. Co.Life Ins. Co.Ins. Co.Ins. Co.Type of CompanyStockMutualMutualMutualPolicy No.680514183191221212502852125Date of Issue4-15-351-6-391-1-2912-31-37Face amount of policy$25,000.00$75,000.00$100,000.00$50,000.00Kind or TypeSingleSingle20-year10-yearpremiumpremiumlifelifelifelifeMaturityDate ofDate ofDate ofDate ofdeathdeathdeathdeathSingle premiums paid$ 9,639.00$37,735.50Total premuims paid$ 70,028.43$32,232.68Dates premiums paid4-15-351-6-391-1-2912-31-37thruthru1-6-4812-21-46Dividends received orcred-ited$ 1,288.25$ 4,071.00$ 17,068.00$ 5,560.00Net cost8,350.7533,664.5052,960.4326,672.68Cash Surrender Value: 5-10-5663,656.0031,829.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,607.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,755.50Difference between costandcash surrender value$ 6,404.75$15,943.31$ 10,695.57$ 5,156.82*181 The Kansas City Life Insurance Co. policy provides that at any time after the end of the second policy year the policy could be surrendered for its cash surrender value in accordance with the following schedule: At the EndCash Loanof Policy Yearor Surrender Value2nd$ 9,212.203rd9,603.204th10,000.705th10,342.206th10,690.507th10,920.208th11,157.009th11,400.0010th11,650.0011th11,906.5012th12,169.2013th12,438.0014th12,712.2015th12,991.7016th13,276.0017th13,564.5018th13,857.5019th14,153.70TWENTIETH14,453.20 The reserve on this policy is computed according to the American Experience Table of Mortality with interest at 3 1/2 percent per annum. The Mutual Benefit Life Insurance Co. policy provides that at the end of any policy year, the policy may be surrendered for the following cash surrender values: Cash Surrender ValueLoan ValueAt End of YearPer $1,000 Insurance1st$458.002nd471.803rd485.834th495.105th504.596th514.307th524.238th534.379th$544.7010th555.2211th565.8912th576.7113th587.6714th598.7415th609.9216th621.1817th632.5118th643.8919th655.3020th666.7225th723.2430th776.7335th824.9340th869.06*182 All calculations of such reserves were made on the basis of the American Experience Table of Mortality with interest at 3 percent yearly, and according to the attained age of the insured. Northwestern policy No. 2121250 was originally issued as an ordinary life policy. The annual premium was $2,331.00. Premiums at this rate were paid in the total sum of $32,634.00. In January 1943, the policy was converted to a 20-payment life policy, and at that time a conversion premium of $20,674.43 was paid. The premium rate then became $3,344.00 per year and a total of $16,720.00 was paid at that basis, the last such premium being paid January 6, 1948. Thus, total gross premiums on the policy were $70,028.43. Northwestern policy No. 2121250 provided that after the payment of premiums for two full years the petitioner would have the option of taking the cash surrender value or having it applied to non-participating term insurance, or participating paid-up life insurance, as follows: LoanPaid-upAt End ofor Cash ValueExtendedTermInsuranceInsuranceof Policy YearPer $1,000YearsDaysPer $1,000 InsuredInsured2$ 30.173270$ 76356.29753139483.14102632015105.74132212526129.13161143027153.30182633528178.32202924039204.182221245310230.94243950311258.612515755312287.232621860213316.852723765214347.492823370215379.192922875216412.013024780117445.973132285118481.123314390019517.523521995020555.22Policyfull-paid21565.8922576.71*183 The values in the foregoing table after the third policy year are equal to the full reserve according to the American Experience Table of Mortality with interest at 3 percent. The basis upon which the table is constructed will apply if this policy is continued in force beyond the twenty-second year. Northwestern policy No. 2852125 also was issued originally as an ordinary life policy on which the annual premium was $1,526.00 and $7,630.00 in premiums were paid on that basis. This policy was also converted in January 1943, to a 10-payment life policy, and a conversion premium paid of $11,748.68. Thereafter, four annual premimums of $3,213.50 were paid, aggregating $12,854.00. The last such premium was paid December 21, 1946. The total gross premiums paid on the policy were $32,232.68. Northwestern policy No. 2852125 provided that after the end of the second policy year the petitioner would have the option of taking the cash surrender value or having it applied to non-participating term insurance, or particpating paid-up insurance, as follows: LoanPaid-upAt End ofor Cash ValueExtendedTermInsuranceInsuranceof Policy YearPer $1,000 InsuredYearsDaysPer $1,000 Insured2$ 77.808121$1663129.2513932714182.51171513765237.65203214806294.74233155847353.90262266888415.20291837929478.76335789610544.70Policyfull-paid11555.2212565.8913576.7114587.6715598.7416609.9217621.1818632.5119613.8920655.3021666.7222678.1326723.24*184 The values in the foregoing table after the ninth policy year are equal to the full reserve according to the American Experience Table of Mortality with interest at 3 percent. The basis upon which the table is constructed will apply if the policy is continued in force beyond the twenty-second year. On May 10, 1956, petitioner transferred and assigned all of his interests in policy No. 2121250 to A. F. Gallun & Sons Corporation for an amount equal to its cash surender value in the sum of $63,656.00 and thereby realized a net gain over his cost of $10,695.57. On May 10, 1956, petitioner transferred and assigned all of his interests in policy No. 2852125 to A. F. Gallun & Sons Corporation for an amount equal to its cash surrender value in the sum of $31,829.50 and thereby realized a net gain over his cost of $5,156.82. On May 22, 1956, petitioner transferred and assigned all of his interests in policy No. 1831912 to A. F. Gallun & Sons Corporation for an amount equal to its cash surrender value in the sum of $49,607.81 and thereby realized a net gain over his cost of $15,943.31. On May 28, 1956, petitioner transferred and assigned all of his interests in policy No. 680514 to A. *185 F. Gallun & Sons Corporation for an amount equal to its cash surrender value in the sum of $14,755.50 and thereby realized a net gain over his cost of $6,404.75. The rate tables in effect in May 1956, when these policies were assigned to the Gallun corporation show that the following annual premiums with anticipated dividends applied to a person of the then insurance age of the petitioner, that is 58 years: AnnualAnticipatedPremiumDividendType of PolicyPer ThousandPer Thousand10-pay lifeNorthwestern Mutual$105.91$13.71Mutual Benefit107.0913.94Kansas City Life99.88Non-participating20-pay lifeNorthwestern Mutual72.0713.10Mutual Benefit74.5314.27Kansas City Life64.59Non-participatingOrdinary lifeNorthwestern Mutual65.7912.95Mutual Benefit66.1912.04Kansas City Life52.88Non-participatingSingle premium life insurance policies issued by Northwestern Mutual Life Insurance Co. on the life of petitioner at his attained age of 58 years for a face amount of $100,000.00 and $50,000.00 would have had costs of $82,213.00 and $41,106.50, respectively, on May 10, 1956, and would*186 have had cash surrender values on that date in the respective amounts of $73,513.00 and $36,756.50 and anticipated annual dividends for 1957 in the respective amounts of $1,133.00 and $566.50. A single premium life insurance policy issued by the Mutual Benefit Life Insurance Company on the life of petitioner at his attained age of 58 years for a face amount of $75,000.00 would have cost $57,636.75 on May 22, 1956, and would have had a cash surrender value on that date of $53,889.56 and anticipated annual dividends of $684.00. The Kansas City Life Insurance Co. would have charged $18,633.25 for a single premium life insurance policy in the face amount of $25,000.00 on the life of petitioner at his attained age of 58 years in May 1956, and such policy would have had a cash surrender value on that date of $17,108.50 and anticipated annual dividends of $203.00. The cash surrender values of the policies were computed by using the American Experience Table of Mortality and interest at the rates specified in the policies compounded annually. At the time the annual net premium for each policy was determined, a provision was made for assumed administrative costs to be incurred by the*187 company which was added to annual net mathematical premium to establish the gross premium. The reserve established for the cash surrender value of each policy was increased each year by an amount represented by the sum of the net mathematical premium (gross premium less tabularly assumed expenses) plus interest on the total value of the reserve computed at the annual rate provided in the policy. From this amount the cost of mortality at the tabular rate, that is the cost assumed in the tables, was deducted to cover expected deaths in that year of all insured persons of the same age as petitioner, computed in accordance with the American Experience Table of Mortality. Each insurance policy, with the exception of that issued by Mutual Benefit, provided with respect to the cash surrender value that the company had the right in the event of surrender of the policy to defer payment of the cash surrender value for a period not in excess of 90 days. The policy issued by Mutual Benefit specified that the values provided in the surrender value table were the "minimum values guaranteed" by the company. Each insurance policy also provided that no assignment of the policy would be binding upon*188 the company until filed at its home office. If the rate of mortality among the company's insureds was less than that assumed, if the company's earnings were greater than those assumed, and if the costs of administration were less than that assumed and, as a result of these factors the premium receipts were in excess of the amounts needed for the conduct of its business, the companies declared "dividends" to the holders of participating policies. Petitioners received so-called dividends on the policies, either in the form of credits against premiums or in the form of direct cash payments. At the time of the transferring of said policies to A. F. Gallun & Sons Corporation, there were no accumulated dividends. Annual dividends had been previously paid on the policies at yearly intervals beginning two years after the dates of issuance. A. F. Gallun & Sons Corporation had an insurable interest in the life of petitioner during 1956. The corporation has retained the four life insurance policies and has kept them in full force and effect since the date of their assignments by petitioner. Opinion Petitioners begin by asserting that there were bona fide assignments of the insurance*189 policies to the corporation and, therefore, a "sale or exchange" of capital assets within the meaning of section 1222(3) of the Internal Revenue Code of 1954. 1We recognize, as does the respondent, that these were bona fide transfers which were not primarily motivated by tax avoidance. We acknowledge that the transaction was designed to give the corporation the benefits of long existing insurance policies on the life of its key executive officer. Unlike Theodore H. Cohen, 39 T.C. - (March 27, 1963), this is not a situation where the assignee was merely a conduit for surrendering the policies. Here too, there was no "rigging," as with some other cases, under which the purchaser of the insurance contracts almost immediately surrendered*190 them to the insurance company and realized their full cash values. The facts in instant case are perhaps even stronger than they were in those cases in which we have previously held such transfers to constitute bona fide sales. See Bolling Jones, Jr., 39 T.C. 404 (1962); Estate of Gertrude H. Crocker, 37 T.C. 605 (1962); and Harry Roff, 36 T.C. 818 (1961), affd., 304 F. 2d 450 (C.A. 3, 1962). However, that is not dispositive of the problem. While these insurance policies technically fall within the definition of capital assets contained in section 1221, the courts have often concluded that not everything having the outward appearance of a capital asset qualifies as such for the purposes of the capital gains provisions. See Commissioner v. P. G. Lake, Inc., 356 U.S. 260 (1958); Nat Holt, 35 T.C. 588 (1961), affd. 303 F. 2d 687 (C.A. 9, 1962); Harry Roff, supra; Simon Jaglom, 36 T.C. 126 (1961), affd. 303 F. 2d 847 (C.A. 2, 1962); and Hallcraft Homes, *191 Inc., 40 T.C. - (April 30, 1963). The main thrust of petitioners' contention is an impassioned plea that this Court should take "the opportunity to return to the fundamentals recognized by it" in Phillips v. Commissioner, 30 T.C. 866 (1958), reversed 275 F. 2d 33 (C.A. 4, 1960), and cease "burying [our] heads in the sands of judicial precedent." The most obvious answer to this is that our American system of jurisprudence has not yet abandoned the doctrine of stare decisis. Nor do we find anything of substance in petitioners' arguments which would cause us to cast it aside here. Their points are not new and they are not persuasive. This same ground has been plowed many times before. We reconsidered our Phillips decision in Bolling Jones, Jr., supra, and decided that the Court of Appeals properly reversed us. Consequently, it would serve no useful purpose to review the authorities again, especially since the petitioners cite no decision of any court holding otherwise. Despite the factual differences, we think this case is controlled by the following decisions: Commissioner v. Phillips, supra, Arnfeld v. United States, 163 F. Supp. 865*192 (Ct. Cls., 1958); Harry Roff, supra; Bolling Jones, Jr., supra; and First National Bank of Kansas City v. Commissioner, 309 F. 2d 587 (C.A. 8, 1962), affirming Michael H. Katz, a Memorandum Opinion of this Court. Under these circumstances we will not disregard this array of judicial precedents. We have carefully analyzed the cases relied on by petitioners and found them to be either inapposite or distinguishable. It is agreed that the petitioner transferred and assigned four life insurance policies to the Gallun corporation for amounts equal to their cash surrender values and thereby realized an increment of $38,200.45 over his cost. If he had exercised his right to surrender these policies to the insurance companies, the increments would certainly have been taxable as ordinary income under section 72(e)(1). 2 In the light of this provision it is evident that Congress did not intend to permit, even through the medium of a bona fide sale, the conversion of what is the equivalent of ordinary income into a capital gain. Furthermore, the reserve established for the cash surrender value of each policy was increased each year by an amount represented*193 by the sum of the net annual premium less assumed administrative expenses, plus interest computed at 3 or 3 1/2 percent. Each year the cash surrender value was increased by a specified amount after deducting assumed mortality costs. Thus the increments realized upon the assignment were primarily attributable to accumulated interest, taxable to petitioners as ordinary income upon receipt under section 61(a)(4). We therefore hold that the entire gain realized on the assignments was ordinary income. See Estate of Gertrude H. Crocker, supra.*194 Alternatively, petitioners contend that, if the increments realized upon the assignments are taxable as ordinary income, then such amounts should be included in their gross income ratably in the years 1956 and the two preceding years under the provisions of section 72(e)(3). 3 This same argument was made and rejected in Harry Roff, supra. At page 826 of the opinion we said: Section 72(e) provides specifically for lump-sum amounts "received under an annuity * * * contract." Nothing in this section or in the congressional comments thereon (see H. Rept. No. 1337 and S. Rept. No. 1622, to accompany H. R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., both at p. 11 (1954)) justifies application of the section to amounts not received "under an annuity * * * contract." Clearly, the amounts received on the sales of the contracts here involved were not so received. The section is applicable to lump-sum payments made by the insurer in discharge of all contractual obliations. See 1 Mertens, Law of Federal Income Taxation, sec. 6A.07, p. 22. *195 Petitioners argue that if the receipts are ordinary income because of section 72(e)(1), then it follows that they are ordinary income for the purposes of all of section 72, including the income-spreading provisions contained in section 72(e)(3). We disagree. It is clear that amounts paid by the Gallun corporation on the assignments of the four life insurance policies were not received by petitioners "under" the life insurance contracts. Petitioners say there is no justification for permitting the respondent to "pick and choose." But, as we see it, the petitioners, not the respondent, cast the mold of this transaction by transferring the policies to the corporation rather than surrendering them to the insurance companies. Accordingly, we hold that the amounts realized by petitioners upon the assignments are fully taxable in the year 1956 since they were not received upon the surrender, redemption or maturity of life insurance contracts. Decision will be entered for the respondent. Footnotes1. SEC. 1222. OTHER TERMS RELATING TO CAPITAL GAINS AND LOSSES. For purposes of this subtitle - * * *(3) Long-Term Capital Gain. - The term "longterm capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income.↩2. SEC. 72. ANNUITIES: CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS. (e) Amounts Not Received as Annuities. - (1) General Rule. - If any amount is received under an annuity, endowment, or life insurance contract, if such amount is not received as an annuity, and if no other provision of this subtitle applies, then such amount - (A) if received on or after the annuity starting date, shall be included in gross income; or (B) if subparagraph (A) does not apply, shall be included in gross income, but only to the extent that it (when added to amounts previously received under the contract which were excludable from gross income under this subtitle or prior income tax laws) exceeds the aggregate premiums or other consideration paid. For purposes of this section, any amount received which is in the nature of a dividend or similar distribution shall be treated as an amount not received as an annuity.↩3. SEC. 72. ANNUITIES: CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS. (e) Amounts Not Received as Annuities. - (3) Limit on Tax Attributable to Receipt of Lump Sum. - If a lump sum is received under an annuity, endowment, or life insurance contract, and the part which is includible in gross income is determined under paragraph (1), then the tax attributable to the inclusion of such part in gross income for the taxable year shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of the taxpayer ratably over the taxable year in which received and the preceding 2 taxable years.↩