Elbert H. Neese, Jr., and Margaret K. Neese, et al. 1 v. Commissioner. Neese v. CommissionerDocket Nos. 3283-62, 3284-62, 3285-62, 3286-62.United States Tax CourtT.C. Memo 1964-288; 1964 Tax Ct. Memo LEXIS 51; 23 T.C.M. (CCH) 1748; T.C.M. (RIA) 64288; November 4, 1964*51 Hiram M. Nowlan, 17 N. Franklin St., Janesville, Wis., for the petitioners. Rex A. Guest, for the respondent. FAYMemorandum Opinion FAY, Judge: The Commissioner determined deficiencies in petitioners' income taxes as follows: Taxable YearDocket No.PetitionerEndedAmount3283-62Elbert H. Neese, Jr. and Margaret K. Neese12/31/59$12,364.533284-62Howard Teague and Elizabeth Teague12/31/5911,268.773285-62Alonzo A. Neese and Jean S. Neese12/31/5912,344.053286-62Elbert H. Neese Trust of 193812/31/5913,914.00The only issue for decision is whether the petitioners realized long-term capital gain or ordinary income upon the assignment of single premium, 20-year endowment contracts to a bank shortly before their maturity dates. All of the facts have been stipulated, are so found, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Those facts necessary to an understanding of our inquiry are recited below. Petitioners Elbert H. Neese, Jr., (hereinafter referred to as Elbert, Jr.) and Margaret K. Neese are husband and wife with their residence at Pittsfield, Massachusetts. They filed a timely joint income tax return for the taxable *52 year 1959 with the district director of internal revenue at Milwaukee, Wisconsin. Elbert, Jr., is, and was at all times material hereto, an officer of Beloit Corporation, Beloit, Wisconsin, and a director of the Beloit State Bank, Beloit, Wisconsin, (hereinafter referred to as the Bank). Petitioners Howard Teague and Elizabeth Teague (hereinafter referred to as Elizabeth) are husband and wife with their residence at Pully-Lausanne, Switzerland. They filed their timely joint Federal income tax return for the taxable year 1959 with the director of international operations at Washington, D.C.Petitioners Alonzo A. Neese (hereinafter referred to as Alonzo) and Jean S. Neese are husband and wife with their residence at Clinton, Wisconsin. They filed their timely joint Federal income tax return for the taxable year 1959 with the district director of interal revenue at Milwaukee, Wisconsin. Alonzo is, and was at all times material hereto, an office of Beloit Corporation, Beloit, Wisconsin. Elbert H. Neese (hereinafter referred to as Elbert) and Laura J. A. Neese (hereinafter referred to as Laura) are the parents of Elbert, Jr., Elizabeth and Alonzo (hereinafter referred to collectively as *53 the Neese children). Petitioner Elbert H. Neese Trust of 1938 (hereinafter referred to as the 1938 trust) has a post office address in Beloit, Wisconsin. The 1938 trust is a 30-year irrevocable trust created by Elbert, as settlor, under an agreement dated September 27, 1938. This trust has been in existence continuously from the date of its creation to the present time and has at all times been administered in Wisconsin. The 1938 trust filed a timely Federal fiduciary income tax return for the taxable year 1959 with the district director of internal revenue at Milwaukee, Wisconsin. Alonzo and Elbert, Jr., have been the duly appointed, qualified and acting trustees of the 1938 trust since 1954. They were appointed successor trustees to the original trustees consisting of H. A. Von Oven (hereinafter referred to as Von Oven), P.J.E. Wood (hereinafter referred to as Wood) and Laura. The Neese children are the beneficiaries of the 1938 trust and as such are entitled to share equally in the distribution of the trust assets upon termination and also are entitled under certain circumstances to income distribution during the existence of the trust. In 1959, the 1938 trust assigned three paid-up, *54 20-year, single premium endowment life insurance policies to the Bank, thereby realizing a total gain of $17,639.92. The policies were acquired originally with funds belonging to the trust. A summary description of each policy and the circumstances pertinent to the assignment follows: THE 1938 TRUSTMUTUAL LIFEPRUDENTIALTHE TRAVELERSINSURANCE CO.INSURANCE CO.INSURERINSURANCE CO.OF NEW YORKOF AMERICAPolicy Number2099774554303510807938Type of PolicySingle Premium,Single Premium,Single Premium,20-Yr. Endowment20-Yr. Endowment20-Yr. EndowmentDate Issued9-1-399-9-3910-10-39Maturity Date9-1-599-9-5910-10-59Face Amount$15,000$15,000$15,000InsuredElizabethElbert, Jr.AlonzoOwnerTrustees of 1938Trustees of 1938Trustees of 1938TrustTrustTrustAssigneeBeloit State BankBeloit State BankBeloit State BankDate of Assignment6-16-596-10-596-15-59BeneficiaryTrustees of 1938Trustees of 1938Trustees of 1938Trust to 6-16-59Trust to 6-10-59Trust to 6-15-59Beloit State BankBeloit State BankBeloit State Bankfrom 6-16-59from 6-10-59from 6-15-59Single Premium, Amt. Pd.$9,112.80$ 9,394.80$ 9,542.85Date Paid9-30-399-9-3910-17-39Dividends Rec'd or CreditedNone$ 623.36$ 605.34Cash Surrender Value: 6-16-59$14,854.056-10-59$15,420.666-15-59$15,393.007-10-59$14,899.20$15,469.87$15,424.72Amt. Rec'd by Trust from Bankon 7-10-59$14,865.00$15,461.91$15,363.46Gain Realized$ 5,752.20$ 6,067.11$ 5,820.61Amt. Rec'd by Bank upon Sur-render of Policy at Maturity$15,000.00$15,623.36$15,605.34*55 The gain realized on each of the aforesaid policies was reported as capital gain on the Federal income tax return filed by the trust for the taxable year 1959. By separate instruments dated December 29, 1934, Elbert and Laura each created a 25-year irrevocable trust, which trusts were known as the Elbert H. Neese Trust of 1934 (hereinafter sometimes referred to as the Elbert trust of 1934) and the Laura J. A. Neese Trust of 1934 (hereinafter sometimes referred to as the Laura trust of 1934), respectively. The Neese children were equal beneficiaries of the corpus of these trusts upon termination and also under certain circumstances were entitled to income distribution during the existence of the trusts. Both trusts terminated in 1959. By separate instruments dated August 14, 1936, Elbert and Laura each created a 20-year irrevocable trust, which trusts were known as the Elbert H. Neese Trust of 1936 (hereinafter sometimes referred to as the Elbert trust of 1936) and the Laura the Elbert trust of 1936) and the Laura J. A. Neese Trust of 1936 (hereinafter sometimes referred to as the Laura trust of 1936), respectively. The Neese children were equal beneficiaries of the corpus of these *56 trusts upon termination and also under certain circumstances were entitled to income distributions during the existence of the trusts. Both trusts were terminated in 1956, at which time all of the trust assets were then distributed to the Neese children in equal shares. The original trustees of the said trusts created by Elbert in 1934 and 1936 were Laura, Von Oven and Wood. The original trustees of the said trusts created by Laura in 1934 and 1936 were Elbert, Von Oven and Wood. On May 25, 1950, Laura resigned as trustee of each of said trusts created by Elbert; and Harry C. Moore was duly appointed on that date as successor trustee to Laura of each of said trusts. Von Oven died on December 26, 1950. Alonzo was duly appointed on February 6, 1951, as successor trustee to Von Oven of each of said trusts created by Elbert, and Elbert, Jr., was duly appointed on February 6, 1951, as successor trustee to Von Oven of each of said trusts created by Laura. Wood resigned as trustee of each of said Elbert trusts and as trustee of each of said Laura trusts on December 31, 1954. Elbert, Jr., was duly appointed on that date as successor trustee to Wood of each of said trusts created by Elbert, *57 and Alonzo was duly appointed on that date as successor trustee to Wood of each of said trusts created by Laura. The Neese Joint Venture is a partnership which was formed on January 2, 1956, by the Neese children, each of whom has a one-third interest therein. In 1959, the Neese Joint Venture assigned 6 paid-up, 20-year, single premium, endowment life insurance policies to the Bank, realizing thereby a total gain of $29,514.04. Said policies were acquired by the Neese children as part of the distributions of corpus received by them from the Elbert trust of 1936 and the Laura trust of 1936 upon the trusts' termination in 1956. A summary description of each policy and the circumstances pertinent to the assignment follows: NEESE JOINT VENTUREMUTUAL LIFEMUTUAL LIFETHE TRAVELERSINSURANCE CO.INSURANCE CO.INSURERINSURANCE CO.OF NEW YORKOF NEW YORKPolicy Number209977355430325543034Type of PolicySingle Premium,Single Premium,Single Premium,20-Yr. Endowment20-Yr. Endowment20-Yr. EndowmentDate Issued9-1-399-9-399-9-39Maturity Date9-1-599-9-599-9-59Face Amount$15,000.00$10,000.00$15,000.00InsuredElizabethElbert, Jr.Elbert, Jr.OwnerTrustees of ElbertTrustees of LauraTrustees of ElbertTrust of 1936Trust of 1936Trust of 1936AssigneeBeloit State BankBeloit State BankBeloit State BankDate of Assignment6-16-596-10-596-10-59BeneficiaryTrustees of ElbertTrustees of LauraTrustees of ElbertTrust of 1936 toTrust of 1936 toTrust of 1936 to6-16-596-10-596-10-59Beloit State BankBeloit State BankBeloit State Bankfrom 6-16-59from 6-10-59from 6-10-59Single Premium, Amt. Pd.$ 9,112.80$ 6,263.20$ 9,394.80Date Paid9-30-399-9-399-9-39Dividends Rec'd or CreditedNone$ 413.57$ 623.36Cash Surrender Value: 6-16-59$14,854.056-10-59$10,278.46$15,420.667-10-59$14,899.20$10,311.26$15,469.87Amt. Rec'd by Joint Venture fromBank on 7-10-59$14,865.00$10,305.98$15,461.91Gain Realized$ 5,752.20$ 4,042.78$ 6,067.11Amt. Rec'd by Bank upon Sur-render of Policy at Maturity$15,000.00$10,413.57$15,623.36NEESE POINT VENTUREPRUDENTIALPRUDENTIALBANKERS LIFEINSURANCE CO.INSURANCE CO.CO. OF DESINSUREROF AMERICAOF AMERICAMOINES, IOWAPolicy Number10807936108079371211999Type of PolicySingle Premium,Single Premium,Single Premium,20-Yr. Endowment20-Yr. Endowment20-Yr. EndowmentDate Issued10-10-3910-10-3910-13-39Maturity Date10-10-5910-10-5910-13-59Face Amount$10,000.00$15,000.00$10,000.00InsuredAlonzoAlonzoAlonzoOwnerTrustees of LauraTrustees of ElbertTrustees of LauraTrust of 1936Trust of 1936Trust of 1936AssigneeBeloit State BankBeloit State BankBeloit State BankDate of Assignment6-15-596-15-596-29-59BeneficiaryTrustees of LauraTrustees of ElbertTrustees of LauraTrust of 1936 toTrust of 1936 toTrust of 1936 to6-15-596-15-596-29-59Beloit State BankBeloit State BankBeloit State Bankfrom 6-15-59from 6-15-59from 6-29-59Single Premium, Amt. Pd.$ 6,361.90$ 9,542.85$ 6,513.80Date Paid10-17-3910-17-3910-17-39Dividends Rec'd or Credited$ 403.21$ 605.34$ 427.90Cash Surrender Value: 6-16-59$10,261.33$15,393.006-29-59$10,490.277-10-59$10,282.46$15,424.72$10,499.07Amt. Rec'd by Joint Venture fromBank on 7-10-59$10,241.96$15,363.46$10,464.08Gain Realized$ 3,880.06$ 5,820.61$ 3,950.28Amt Rec'd by Bank upon Sur-render of Policy at Maturity$10,403.21$15,605.34$10,633.60*58 Said policies along with other assets so received were contributed by the Neese children in 1956 to the Neese Joint Venture. The policies were originally acquired by the trusts with funds belonging to the trusts. On the Federal partnership return of income filed by the Neese Joint Venture for the year 1959, the gain on each of the policies resulting from the assignments thereof to the Bank was reported as a capital gain. The Neese children likewise on their aforementioned Federal income tax returns filed for the taxable year 1959 reported such gain as distributive capital gain from the Neese Joint Venture. In 1959 the Laura trust of 1934 assigned 3 paid-up, 20-year, single premium, endowment life insurance policies to the Bank, realizing thereby a total gain of $29,409.60. The policies were acquired originally with funds belonging to the trust. A summary description of each policy and the circumstances pertinent to the assignment follows: LAURA TRUST OF 1934MUTUAL LIFEPRUDENTIALTHE TRAVELERSINSURANCE CO.INSURANCE CO.INSURERINSURANCE CO.OF NEW YORKOF AMERICAPolicy Number2099771554303110807939Type of PolicySingle Premium,Single Premium,Single Premium,20-Yr. Endowment20-Yr. Endowment20-Yr. EndowmentDate Issued9-1-399-9-3910-10-39Maturity Date9-1-599-9-5910-10-59Face Amount$25,000.00$25,000.00$25,000.00InsuredAlonzoElbert, Jr.ElzabethOwnerTrustees of LauraTrustees of LauraTrustees of LauraTrust of 1934Trust of 1934Trust of 1934AssigneeBeloit State BankBeloit State BankBeloit State BankDate of Assignment6-16-596-10-596-15-59BeneficiaryTrustees of LauraTrustees of LauraTrustees of LauraTrust of 1934 toTrust of 1934 toTrust of 1934 to6-15-596-10-596-15-59Beloit State BankBeloit State BankBeloit State Bankfrom 6-15-59from 6-10-59from 6-15-59Single Premium, Amt. Pd.$15,167.00$15,658.00$15,931.25Date Paid9-30-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-17-39Dividends Rec'd or CreditedNone$ 1,039.93$ 1,023.35Cash Surrender Value: 6-16-59$24,756.756-10-59$25,702.106-15-59$25,667.997-10-59$24,832.00$25,784.12$25,720.88Amt. Rec'd by Trust from Bankon 7-10-59$24,775.00$25,770.86$25,619.99Gain Realized$ 9,608.00$10,112.86$ 9,688.74Amt. Rec'd by Bank upon Sur-render of Policy at Maturity$25,000.00$26,039.93$26,023.35*59 On the Federal fiduciary income tax return filed by the Laura trust of 1934 for the year 1959, the gain on each policy resulting from the assignments was reported as a capital gain. The Neese children on their aforementioned Federal income tax returns filed for the year 1959 likewise reported such gain as capital gain distribution from the trust. In 1959 the Elbert trust of 1934 assigned 3 paid-up, 20-year, single premium, endowment life insurance policies to the Bank, realizing thereby a total gain of $17,644.74. The policies were acquired originally with funds belonging to the trust. A summary description of each policy and the circumstances pertinent to the assignment follows: ELBERT TRUST OF 1934MUTUAL LIFEPRUDENTIALTHE TRAVELERSINSURANCE CO.INSURANCE CO.INSURERINSURANCE CO.OF NEW YORKOF AMERICAPolicy Number2099772554303310807935Type of PolicySingle Premium,Single Premium,Single Premium,20-Yr. Endowment20-Yr. Endowment20-Yr. EndowmentDate Issued9-1-399-9-3910-10-39Maturity Date9-1-599-9-5910-10-59Face Amount$15,000.00$15,500.00$15,000.00InsuredAlonzoElbert, Jr.ElizabethOwnerTrustees of ElbertTrustees of ElbertTrustees of ElbertTrust of 1934Trust of 1934Trust of 1934AssigneeBeloit State BankBeloit State BankBeloit State BankDate of Assignment6-16-596-10-596-15-59BeneficiaryTrustees of ElbertTrustees of ElbertTrustees of ElbertTrust of 1934 toTrust of 1934 toTrust of 1934 to6-16-596-10-596-15-59Beloit State BankBeloit State BankBeloit State Bankfrom 6-16-59from 6-10-59from 6-15-59Single Premium, Amt. Pd.$ 9,100.20$ 9,394.80$ 9,558.75Date Paid9-30-399-9-3910-17-39Dividends Rec'd or CreditedNone$ 623.36$ 613.60Cash Surrender Value: 6-16-59$14,854.056-10-59$15,420.666-15-59$15,400.207-10-59$14,899.20$15,469.87$15,431.93Amt. Rec'd by Trust from Bankon 7-10-59$14,865.00$15,461.91$15,371.58Gain Realized$ 5,764.80$ 6,067.11$ 5,812.83Amt. Rec'd by Bank upon Sur-render of Policy at Maturity$15,000.00$15,623.36$15,613.60*60 On the Federal fiduciary income tax return filed by the Elbert trust of 1934 for the year 1959 the gain resulting from the assignment of each of the aforesaid policies was reported as capital gain. The Neese children on their aforementioned Federal income tax returns filed for the year 1959 likewise reported such gain as capital gain distribution from the trust. With respect to all of the aforementioned insurance policies, the amounts paid by the Bank to the assignors in connection with the assignments were based on a discount rate of 6 percent a year from July 10, 1959, to the various maturity dates of the respective policies. The difference between the amount so paid by the Bank and the amount it received upon surrender of the various policies upon maturity was treated as interest income by the Bank on its books and records. Each of the Mutual Life Insurance Company policies numbers 5543031, 5543032, 5543033, 5543034 and 5543035 provided for the payment, at any time after the policy had been in force one year, of the cash surrender value per $1,000 of insurance as specified in the following table: At EndAt Endof PolicyCashof PolicyCashYearValueYearValue1$ 556.9511$ 748.722576.7912770.253602.2613792.604618.3114815.805634.9515839.896652.2216864.907670.1217890.878688.7018923.999707.9719961.1610727.97201,000.00*61 The above values were computed in accordance with the American Experience Table of Mortality, assuming interest at the rate of 3 percent per year. Bankers Life Company policy number 1211999 provided for the payment, at the end of the first policy year and thereafter, of the cash surrender value per $1,000 of insurance as specified in the following table: At EndAt Endof PolicyCashof PolicyCashYearValueYearValue1$ 557.4311$ 757.952582.3312783.453607.7813809.764623.7914836.935640.4115864.986657.6416889.957675.5117915.908694.0518942.869713.2819970.8710733.24201,000.00 The above values were computed in accordance with the American Experience Table of Mortality, assuming interest at the rate of 3 percent per year. Each of The Travelers Insurance Company policies numbers 2099771, 2099772, 2099773 and 2099774 provided for the payment, on any anniversary date, of the cash surrender value per $1,000 of insurance as specified in the following table: At EndAt Endof PolicyCashof PolicyCashYearValueYearValue1$ 494.9511$ 717.752526.1912741.763557.8213766.804575.0314792.935592.9715820.186611.6716848.637631.1617878.328651.4718909.319672.6519953.6810694.73201,000.00 The above values were computed in *62 accordance with the American Experience Table of Mortality, assuming interest at the rate of 3 1/2 percent per year. Each of The Prudential Insurance Company of America policies numbers 10807935, 10807936, 10807937, 10807938 and 10807939 provided for the payment, at any time after the policy had been in force for one year or more, of the cash surrender value per $1,000 of insurance as specified in the following table: At EndAt Endof PolicyCashof PolicyCashYearValueYearValue1$ 521.0011$ 730.002543.0012754.003570.0013778.004587.0014803.005606.0015829.006625.0016859.007644.0017891.008664.0018923.009686.0019956.0010707.00201,000.00 The above values were computed in accordance with the American Experience Table of Mortality, assuming interest at the rate of 3 1/2 percent per year. In the deficiency notices sent to the petitioners, respondent took the position that the gain arising from the assignment of all of the policies constituted ordinary income. Petitioners contend that the insurance policies were capital assets and that the gain realized on the assignments of the policies should be recognized as long-term capital gain. Respondent, on the other hand, maintains that the gain realized *63 represents ordinary income in the nature of interest and as such should be taxed as ordinary income rates. We agree with respondent. The issue of whether or not the gain realized on the "sale or exchange" of insurance policies is to be treated as capital gain or ordinary income is not a novel one. Petitioners recognize this in their brief. 2*65 The issue has been litigated in this Court, as well as in various Circuit Courts. See Commissioner v. Phillips, 275 F. 2d 33 (C.A. 4, 1960), reversing 30 T.C. 866 (1958); First National Bank of Kansas City v. Commissioner, 309 F. 2d 587 (C.A. 8, 1962), affirming a Memorandum Opinion of this Court; Gallun v. Commissioner, 327 F. 2d 809 (C.A. 7, 1964), affirming a Memorandum Opinion of this Court, Roff v. Commissioner, 304 F. 2d 450 (C.A. 3, 1962), affirming per curiam 36 T.C. 818 (1961); Bolling Jones, Jr., 39 T.C. 404 (1962); S. M. Friedman, 41 T.C. 428 (1963); Arnfeld v. United States, 143 Ct. Cl. 277, 163 F. Supp. 865 (1958), certiorari denied 359 U.S. 943 (1959). The aforecited cases have uniformly held that the profits realized from the sale of the annuity on insurance policies should be treated as ordinary income rather than capital *64 gain. The underlying reason given is that all the taxpayer is doing is assigning his right to income which has already accrued. Bolling Jones, Jr., supra.See Commissioner v. P. G. Lake, Inc., 356 U.S. 260 (1958). This Court in Bolling Jones, Jr., supra, in view of the reversal by the Court of Appeals for the Fourth Circuit in Percy W. Phillips, 30 T.C. 866 (1958), reconsidered our decision in that case and decided that the Court of Appeals was correct. Accordingly, no useful purpose would be served by our again reviewing the authorities, especially since petitioners concede that there is no court decision holding otherwise. Petitioners try to distinguish on the facts this case from all the decided cases in this area. They argue that here the various trusts were the owners of the policies. The policies were bought with money supplied by the trusts. The trusts named the beneficiaries. The various petitioners, although the beneficiaries of the trusts, had no control over the policies. Finally, the petitioners argue that here the policies were bought strictly for investment purposes. Petitioners claim that in all the other cases the taxpayer purchased the policy with his own funds, on his own life, and had complete control over the policy. Although the facts which petitioners direct our attention to may very well differ from those in the decided cases, we fail to see that the difference has *66 any bearing on the theory underlying all the decided cases. The policies in this case may very well be capital assets in the hands of the trusts. However, as was stated in First National Bank of Kansas City v. Commissioner, supra, at 588: The major issue is, therefore, not whether the policy was a capital asset, but whether the gain realized thereon represented an appreciation of the capital asset itself, or rather represented income produced by such asset. * * * In the instant case it is clear from the facts that the gain is not attributable to an appreciation of the policies but rather represents accumulated interest income produced by said policies. We have set forth in our findings of fact various schedules showing the cash surrender value of each policy herein involved at the date of assignment, together with schedules showing how the cash surrender value grew over the life of the policies. The cash surrender value was based upon the mortality tables, together with an interest factor. In each case the proceeds received from the assignment of the policies were within a few dollars of the then cash surrender value. If the policies were surrendered instead of assigned, the increased *67 value, which had accrued up to that time would have been ordinary income. Bolling Jones, Jr., supra; section 72(e), Internal Revenue Code of 1954.3*68 Having decided that the gain realized on surrender of the policies would be ordinary income, is the result changed merely by a sale of the policies a few days before maturity? The courts have uniformly held in this area that it is not. Ordinary income cannot be transformed into capital gain through the simple expedient of a sale. Commissioner v. Phillips, supra; Roff v. Commissioner, supra; and First National Bank of Kansas City v. Commissioner, supra.The realization of the gain upon the assignments to the Bank was the anticipation of ordinary income and must be taxed accordingly. Bolling Jones, Jr., supra; Commissioner v. P. G. Lake, Inc., supra.Decisions will be entered for the respondent. Footnotes1. Proceedings of the following petitioners are consolidated herewith: Howard Teague and Elizabeth Teague, Docket No. 3284-62; Alonzo A. Neese and Jean S. Neese, Docket No. 3285-62; and Elbert H. Neese Trust of 1938, Docket No. 3286-62.↩2. Petitioners state in their original briefr at page 7:The question of the tax consequences of a sale before maturity of an insurance policy or an annuity has come before this Court in a number of cases. The following cases involved insurance policies:Phillips v. Commissioner (Dec. 23,077) 30 TC 866Reversed (60-1 USTC Par. 9294) 275 F.2d 33 [5 AFTR 2d 855]Bolling Jones, Jr. (Dec. 25,756) 39 TC 404Estate of Gertrude H. Crocker (Dec. 25,303) 37 TC 605Edwin A. Gallun (Dec. 26,182 M) 22 TCM 798S. M. Friedman (Dec/ 26,600) 41 TC–No. 43The following cases involved annuity contracts:Arnfeld v. United States (58-2 USTC Par. 9692) 163 F. Supp. 865 [2 AFTR 2d 5336]Harry Roff (Dec. 24,970) 36 TC 818Affd (62-2 USTC Par. 9515) 204 F.2d 450 [9 AFTR 2d 1638First National Bank v. Commissioner (62-2 ISTC Par. 9807 309 F.2d 587 [10 AFTR 2d 5904]In each case, the holding is thaat the amount by which the selling price exceeded the cost is taxable as ordinary income, not as capital gain. * * *3. (e) Amounts Not Received as Annuities. - (1) General Rule. - If any amount is received under an annuity, endowment, or life insurance contract, if such amount is not received as an annuity, and if no other provision of this subtitle applies, then such amount - (A) if received on or after the annuity starting date, shall be included in gross income; or (B) if subparagraph (A) does not apply, shall be included in gross income, but only to the extent that it (when added to amounts previously received under the contract which were excludable from gross income under this subtitle or prior income tax laws) exceeds the aggregate premiums or other consideration paid. For purposes of this section, any amount received which is in the nature of a dividend or similar distribution shall be treated as an amount not received as an annuity.↩